CORRECTED COPY

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

No. 14-5050

BID PROTEST

SRA INTERNATIONAL, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of
Federal Claims in 13-CV-0969,
Judge Susan G. Braden

**PLAINTIFF-APPELLANT'S PRINCIPAL BRIEF**

---

Michael J. Schaengold
Patton Boggs LLP
2550 M Street, NW
Washington, DC 20037
Tel: (202) 457-6523
Fax: (202) 457-6315
Email: mschaengold@pattonboggs.com

*Attorney for Plaintiff-Appellant*

Robert S. Metzger
Jeffery M. Chiow
Oliya S. Zamaray
Rogers Joseph O'Donnell
750 9th Street, NW, Suite 710
Washington, DC 20001
Tel: (202) 777-8951
Fax: (202) 347-8429
Email: rmetzger@rjo.com

*Attorneys for Plaintiff-Appellant*
March 20, 2014

**Form 9**

FORM 9.   Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

SRA International, Inc. _____ v. United States _____

No. 14-5050

# CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Robert S. Metzger _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

SRA International, Inc.

_____

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

None.

_____

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

_____

4.  ☑   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Robert Metzger, Patricia Meagher, Jeffery Chiow, Oliya Zamaray of Rogers Joseph O'Donnell
Michael Schaengold of Patton Boggs

_____

March 26, 2014 _____          /s/ Robert S. Metzger _____
            Date                                        Signature of counsel

                                          Robert S. Metzger _____
                                                    Printed name of counsel

Please Note: All questions must be answered
cc: _____

124

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ...................................................1

STATEMENT OF THE ISSUES.....................................................1

STATEMENT OF THE CASE........................................................1

    A.    ISC-2 And FDIC's Need For Information Technology
Infrastructure Support ...........................................................2

    B.    SRA's First GAO Protest ........................................................2

    C.    ISC-3 Solicitation Included FDIC Integrity Requirements...................3

    D.    SRA's Second GAO Protest....................................................3

    E.    Administrative Record Discloses False Assurance.............................4

    F.    GSA's Response to OCI Allegations .........................................6

    G.    The GSA OCI Waiver Action And Disclosure Of False
Certifications ...................................................................6

    H.    GAO's Disposition of the Second Protest....................................7

    I.    SRA's CFC Action ............................................................7

    J.    CFC Found Jurisdiction ......................................................7

    K.    GAO's Advisory Opinion ....................................................9

    L.    The CFC Adopted, Without Analysis, GAO's Advisory
Opinion & Deemed The Remaining Counts of SRA's
Complaint Moot ..............................................................10

SUMMARY OF ARGUMENT .........................................................11

ARGUMENT ..........................................................................14

I.    STANDARD OF REVIEW........................................................14

II.    THE CFC HAS § 1491(B) JURISDICTION OVER SRA'S
ENTIRE COMPLAINT............................................................16

    A.    The CFC Has Jurisdiction Under § 1491(b) Over Alleged
Violations Of Statute And Regulation In Connection
With A Procurement Or Proposed Procurement...............................16

    B.    FASA Limits But Does Not Eliminate The CFC's §
1491(b) Jurisdiction..........................................................23

    C.    SRA Has Alleged Violations Of Statute And Regulation

In Connection With A Procurement Or Proposed
Procurement.........................................................................29

D.    The Government's And CSC's Objections To
Jurisdiction Are Unpersuasive ...........................................33

III.    THE CFC FAILED TO ADJUDICATE ALLEGATIONS
WITHIN ITS JURISDICTION ........................................................43

A.    Courts Must Adjudicate Matters Properly Pled And
Within Their Jurisdiction ....................................................44

B.    The CFC Did Not Adjudicate Matters Properly Pled By
SRA And Within Its Jurisdiction ........................................45

C.    The CFC Erred By Failing To Adjudicate SRA's Claims .................53

IV.    SRA HAS DEMONSTRATED ENTITLEMENT TO A STAY
TO AVOID PREJUDICIAL AND IRREPARABLE HARM
PENDING REMAND TO THE CFC............................................53

CONCLUSION AND RELIEF SOUGHT ...............................................54

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126 (2006). .............................39

*Adams v. United States*, 391 F.3d 1212 (Fed. Cir. 2004). ......................................14

*Allied Tech. Group, Inc. v. United States*, 649 F.3d 1320 (Fed. Cir. 2011). ...........49

*AT&T Gov't Solutions, Inc.*, B-407720 et al., 2013 CPD ¶ 45..............................51

*Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374 (Fed. Cir. 2009). ..... 50, 51

*Bannum, Inc. v. United States*, 404 F.3d 1346 (Fed. Cir. 2005)..............................15

*BayFirst Solutions, LLC v. United States*, 104 Fed. Cl. 493 (2012)........... 39, 41, 42

*Bell/Heery v. United States*, 739 F.3d 1324 (Fed. Cir. 2014).................................15

*Billings v. United States*, 322 F.3d 1328 (Fed. Cir. 2003)......................................15

*Centech Group, Inc. v. United States*, 78 Fed. Cl. 496 (2007). ........................ 45, 49

*Chameleon Integrated Svcs., LLC v. United States*, 111 Fed. Cl. 564 (2013). .......40

*CIGNA Gov't Servs., LLC*, B-401068.4, et al, 2010 CPD ¶ 230. ...........................51

*Cohen Fin. Servs. v. United States*, 110 Fed. Cl. 267 (2013). ................................48

*Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976)........44

*Corel Corp. v. United States*, 165 F. Supp. 2d 12 (D.D.C. 2001). ................... 29, 32

*DataMill v. United States*, 91 Fed.Cl. 740 (2010). .................................................39

*Davis v. Passman*, 442 U.S. 228 (1979). .................................................................33

*Distributed Solutions v. United States*, 539 F.3d 1340 (Fed. Cir. 2008)......... passim

*Distributed Solutions, Inc. v. United States*, 76 Fed. Cl. 524 (2007). ....................21

*Doe v. United States*, 463 F.3d 1314 (Fed. Cir. 2006). ..........................................15

*Dysart v. United States*, 369 F.3d 1303 (Fed. Cir. 2004). ......................................15

*Emery Worldwide Airlines v. United States*, 264 F.3d 1074 (Fed. Cir. 2003). .......17

*Florida Power & Light Co. v. Lorion*, 470 U.S. 729 (1985).................................20

*Global Computer Enters. v. United States*, 88 Fed. Cl. 350 (2009). .... 23, 36, 37, 41

*Health Sys. Mktg. & Dev. Corp. v. United States*, 26 Cl. Ct. 1322 (1992). ............49

*Hibbs v. Winn*, 542 U.S. 88 (2004)........................................................................27

*Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324 (Fed. Cir. 2001). ......................................................................... passim

*Keco Industries, Inc. v. United States*, 203 Ct. Cl. 566 (1974). .............................16

*McAfee, Inc. v. United States*, 111 Fed. Cl. 696 (2013). .........................................40

*McTech Corp.*, B-406100 et al., 2012 CPD ¶ 97. ....................................................50

*MED Trends v. United States*, 102 Fed. Cl. 1 (2011). ..................................... 24, 40

*Mori Assocs. v. United States*, 102 Fed. Cl. 503 (2011)..........................................40

*Mori Assocs. v. United States*, 113 Fed. Cl. 33 (2013)............................................41

*Novell, Inc. v. United States*, 109 F. Supp. 2d 22 (D.D.C. 2000)...........................17

*O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973 (10th Cir. 2004), *aff'd*, 546 U.S. 418 (2006)...............................................................44

*PAI Corp. v. U.S.*, 614 F.3d 1347 (Fed. Cir. 2010). .................................................15

*PBGA, LLC v. United States*, 389 F.3d 1219 (Fed. Cir. 2004)...............................27

*RAMCOR Servs. Group, Inc. v. United States*, 185 F.3d 1286 (Fed. Cir. 1999). .......................................................................................................... passim

*RAMCOR Servs. Group, Inc. v. United States*, 41 Fed. Cl. 264 (1998). .................18

*REEP Inc.*, B-290688, 2002 CPD ¶ 158. .................................................................43

*Resource Cons. Group v. United States*, 597 F.3d 1238 (Fed. Cir. 2010). .............33

*S.K.J. & Assocs. v. United States*, 67 Fed. Cl. 218 (2005). ....................................49

*Savantage Fin. Svcs., Inc. v. United States*, 81 Fed. Cl. 300 (2008). .....................40

*Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C. Cir. 1970).... 16, 22, 29, 34

*Solute Consulting v. United States*, 103 Fed. Cl. 783 (2012). .................................40

*Solutions by Design Alliant Joint Venture, LLC v. U.S.*, 2013 U.S. Claims LEXIS 601 (2103) ...............................................................................................40

*Southfork Sys. v. United States*, 141 F.3d 1124 (Fed. Cir. 1988). ..........................16

*SRA Int'l, Inc.*, B-407709.5, B-407709.6, 2013 CPD ¶ 281......................................7

*STR, LLC*, B-297421, 2006 CPD ¶ 11. ...................................................................21

*Technatomy Corp.*, B-405130, 2011 CPD ¶107.......................................................24

*Toews v. United States*, 376 F.3d 1371 (Fed. Cir. 2004)........................................44

*Total Medical Mgmt. v. United States*, 104 F.3d 1314 (Fed. Cir. 1997). ...............32

*Trilon Educ. Corp. v. United States*, 217 Ct. Cl. 266 (1978). ................................31

*Turner Constr. Co., Inc. v. United States*, 94 Fed. Cl. 586 (2010)...........................5

*Unisys Corp. v. United States*, 90 Fed. Cl. 510 (2009)......................................40

*United States v. Amdahl Corp.*, 786 F.2d 387 (Fed. Cir. 1986). .......................32

*W. Shoshone Nat'l Council v. U.S.*, 279 Fed. Appx. 980 (Fed. Cir. 2008). ............14

*Weeks Marine, Inc. v. United States*, 79 Fed.Cl. 22 (2007)....................................40

**Statutes**

12 U.S.C. § 1822. ........................................................................ 3, 30

18 U.S.C. § 1001. .............................................................................31

18 U.S.C. § 1007. .............................................................................31

18 U.S.C. § 287. ..............................................................................31

28 U.S.C. § 1295. ..............................................................................1

28 U.S.C. § 1491. ....................................................................... passim

28 U.S.C. § 2107. ..............................................................................1

28 U.S.C. § 2522. ..............................................................................1

31 U.S.C. § 3553. .............................................................................18

31 U.S.C. §§ 3551 *et seq.* ............................................................ passim

41 U.S.C. § 111. ..............................................................................25

41 U.S.C. § 253j (1994). .....................................................................23

41 U.S.C. § 253j (2008). .....................................................................23

41 U.S.C. § 403(2). ..........................................................................25

41 U.S.C. § 4106. ...................................................................... passim

Pub. L. No. 104-320, 110 Stat. 3870. ............................................. passim

Pub. L. No. 112-81, § 813, 125 Stat. 1491. ...........................................24

**Other Authorities**

140 Cong. Rec. 23885 (1994). ..............................................................36

Rep. No. 103-259 (1994). .....................................................................36

S. Rep. No. 103-258 (1994). .................................................................36

S. Rep. No. 103-259 (1994). ..................................................................................23

**Rules**

Fed. R. App. P. 4. .....................................................................................................1

RCFC 12(b)(1). .......................................................................................................14

RCFC 12(b)(6). .......................................................................................................14

RCFC 52.1(c). .........................................................................................................47

**Regulations**

12 C.F.R. Part 366......................................................................... 3, 30, 31, 47

4 C.F.R. § 21.11. ......................................................................................................8

4 C.F.R. § 21.2. ......................................................................................................43

4 C.F.R. § 21.3. ........................................................................................................4

4 C.F.R. § 21.9. ........................................................................................................6

FAR 2.101. .............................................................................................................21

FAR 9.503. ..................................................................................................... 30, 46

FAR 9.504. ...............................................................................................................5

FAR 9.504. ...............................................................................................................5

FAR Subpart 9.5. ......................................................................................... passim

## <u>TABLE OF CONTENTS FOR ADDENDUM</u>

Judgment (February 3, 2014) ................................................................................ JA1

Final Order (February 3, 2014) .................................................................. JA2-JA7

Opinion and Order (January 26, 2014) ..................................................... JA8-JA15

Memorandum Opinion and Order (January 13, 2014) ........................... JA16-JA25

## <u>STATEMENT OF RELATED CASES</u>

No other appeal in or from the civil actions in the U.S. Court of Federal Claims has been before this or any other appellate court.  Counsel is not aware of any other case, in this or any other court, which would be directly affected by this Court's decision in this appeal.

# JURISDICTIONAL STATEMENT

The Court of Federal Claims ("CFC") had jurisdiction over the action giving rise to this appeal pursuant to 28 U.S.C. § 1491(b). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(3).

The Notice of Appeal, JA382, from the February 3, 2014 Final Judgment (Braden, J.) JA1, dismissing the Complaint of Plaintiff-Appellant SRA International, Inc. ("SRA") in its entirety, was timely filed in accordance with 28 U.S.C. §§ 2107, 2522 and Fed. R. App. P. 4(a) on February 4, 2014.

# STATEMENT OF THE ISSUES

A.     Does the CFC have jurisdiction over post-award violations of statute and regulations in connection with a task order procurement?

B.     Did the CFC adjudicate all of the matters properly raised and alleged by SRA in its Complaint and that are within the CFC's jurisdiction?

# STATEMENT OF THE CASE

SRA contends that the Government will violate the statutes and regulations of the Federal Deposit Insurance Corporation ("FDIC"), and the Administrative Procedure Act ("APA") if the General Services Administration ("GSA") and FDIC proceed to procure information technology services from Computer Sciences Corporation ("CSC") notwithstanding a waiver of organizational conflict of interest ("OCI") issued by the GSA under the Federal Acquisition Regulation ("FAR"). The principal issue for this Court to decide is whether, as SRA contends, the CFC possessed jurisdiction over these allegations

- 1 -

under 28 U.S.C. § 1491(b).  Should the Court concur that jurisdiction is present, the remaining issue is whether the CFC properly adjudicated all of the contentions within its jurisdiction.  SRA contends that the CFC erred by relying without analysis on a GAO advisory opinion and failed to adjudicate certain properly pled issues (over which it had jurisdiction).  Consequently, the CFC's Judgment should be vacated and the case remanded to the CFC for further proceedings.

### A.    ISC-2 And FDIC's Need For Information Technology Infrastructure Support

Since September 2009, SRA has provided network infrastructure support services to the FDIC under its Infrastructure Support Contract ("ISC-2 Contract").  JA175, ¶c.  The follow-on procurement, ISC-3, was conducted via interagency agreement by the Federal Systems Integration and Management Center ("FEDSIM") of the GSA, for the benefit of FDIC.  JA179-80, ¶8, ¶9.

### B.    SRA's First GAO Protest

On June 12, 2012, GSA issued a solicitation, Task Order Request ("TOR") #GSC-QF0B-12-0020, for ISC-3.  JA66, ¶1.  GSA awarded Task Order #GST0013AJ0013 to CSC on October 12, 2012.  JA66, ¶1.  SRA filed a protest at the U.S. Government Accountability Office ("GAO").  JA66, ¶2. As a result of improprieties in the ratings of the offers, the protest was dismissed after GSA agreed to take corrective action to include soliciting new proposals and conducting a new evaluation.  JA66, ¶2.

## C.    ISC-3 Solicitation Included FDIC Integrity Requirements

In fulfillment of its obligation to take corrective action, GSA issued

four amendments to the original TOR.  JA66, ¶3.  The TOR included a Special

Provision, at paragraph H.9.1, expressly directing that the OCI requirements at

FAR Subpart 9.5 were "in addition to" special and distinct FDIC requirements

"specified in 12 CFR Part 366" and "in the event of a conflict between this

provision and the requirements of 12 CFR Part 366, the latter shall control."

JA194-95, ¶28.  The revised TOR also contained a Section K, "Representations,

Certifications, and Other Statements of Offerors or Respondents," which stated

that "all contractors that perform work for the FDIC shall be in compliance with

the minimum standards of the FDIC integrity and fitness."  JA195, ¶29.

Certifications as to integrity were required.  Section K stated: "Certification failure

under Title 12, CFR, Part 366 … shall result in the offeror being found non-

responsible for award of this task order."  JA195, ¶29.  Hence, in addition to the

OCI requirements of FAR Subpart 9.5, the TOR was subject to the requirements in

applicable FDIC laws and regulations, including 12 U.S.C. § 1822(f) and 12 C.F.R.

Part 366.  JA194-96, ¶¶28-29.

## D.    SRA's Second GAO Protest

On August 14, 2013, GSA awarded to CSC Task Order

#GST0013AJ0084 for $365,462,364.  (This is referred to throughout as the "ISC-3

Contract" or "Task Order"). JA70, ¶24. SRA requested a debriefing at which GSA conveyed that Blue Canopy Group, LLC ("Blue Canopy") would be a subcontractor for CSC on the ISC-3 Contract. JA9. For the previous five years, Blue Canopy was under contract to conduct security audits for the FDIC on the ISC-2 contract. JA9. Blue Canopy's duties, namely monitoring and inspecting FDIC network security (for which SRA was responsible under ISC-2), gave Blue Canopy direct insight into FDIC's operations and SRA's performance. JA18, *3; JA215, ¶1; JA244-45. Blue Canopy's work also afforded it plenary access to electronically-stored information of SRA and other FDIC contractors. JA190, ¶15; JA192, ¶22.

An OCI was present because Blue Canopy had "access to SRA's proprietary information," knowledge of "how the FDIC evaluated SRA's work," and was a team member and prospective subcontractor to CSC for the ISC-3 contract. JA190, ¶14-15. On August 26, 2013, SRA filed a second protest with the GAO that included an "unequal access to information" OCI allegation. JA70, ¶25; JA190, ¶14.

### E.    Administrative Record Discloses False Assurance

On September 26, 2013, SRA received the Agency Report (dated September 25, 2013) in the pending ISC-3 protest. *See generally* JA32-103; 4 C.F.R. § 21.3(b), (c), (f)-(i). It showed that CSC was aware of Blue Canopy's

work for FDIC when it included Blue Canopy in its proposal as a teammate and

prospective subcontractor.  JA74-91.  CSC touted Blue Canopy's experience at

FDIC, citing its "deep understanding" of FDIC's "environment."  JA74.

As a condition of eligibility, the TOR required both CSC and Blue

Canopy to certify that no OCI was present.  JA190, ¶17; JA195, ¶29.  The Agency

Report included documentation dated March 20, 2013 in which Blue Canopy

confirmed, to the best of its knowledge, that there were no "existing OCI issues"

regarding this TOR.  JA93; *see also* JA67-68, ¶10.  According to the Agency

Report, CSC made the same confirmation on April 4, 2013.  JA95-101; *see also*

JA67-68, ¶10.  CSC's proposal to GSA thus included false assurances that no

conflict of interest was present.  JA95-97; *see also* JA67-68, ¶10; JA190, ¶17.

Only after GSA produced the Agency Report did SRA know, and then for the first

time, that CSC and Blue Canopy had misrepresented the absence of OCIs, that

there had been no OCI mitigation, and that GSA had not previously investigated

the OCI.[1]  *See generally* JA67-68, ¶10; JA73-103.

---

[1] FAR 9.504(a)(1) requires Contracting Officers to identify and evaluate potential
OCIs as early as possible.  FAR 9.504(a)(2) directs Contracting Officers to avoid,
neutralize, or mitigate significant potential conflicts before award.  *See Turner
Constr. Co., Inc. v. United States*, 94 Fed. Cl. 586, 590-92 (2010) (discussing a
Contracting Officer's duties under FAR 9.504 to identify, evaluate and then avoid,
neutralize, or mitigate OCI).

F.    **GSA's Response to OCI Allegations**

With its September 25 Agency Report and accompanying Memorandum of Law, GSA also moved to dismiss SRA's OCI allegations as untimely.  JA32-33.  Yet, at the same time, GSA forced Blue Canopy off of CSC's team, JA103, and claimed that "any possible OCI has been avoided by the removal of Blue Canopy from CSC's ISC3 team," JA33.

G.    **The GSA OCI Waiver Action And Disclosure Of False Certifications**

On November 25, 2013, just 9 days before the 100-day deadline for GAO's decision resolving the protest, *see* 4 C.F.R. § 21.9(a), and 103 days after awarding the ISC-3 task order to CSC, GSA waived the "unequal access to information" OCI.  JA173.  By its terms, the GSA waiver was taken under FAR Subpart 9.5, i.e., the OCI rules generally applicable to federal acquisitions.  JA174-85.  The GSA OCI waiver was accompanied by Determination & Findings ("D&F") that confirmed both CSC and Blue Canopy had made false certifications regarding the absence of conflicts of interest.[2]  JA177, ¶6.  These false certifications violated the TOR's explicit requirements and applicable laws.

---

[2] The FEDSIM Contracting Officer who authored the D&F said he did not identify any OCI prior to award because none of the facts reasonably before him indicated the possibility of an OCI.  JA177, ¶6.  In fact, neither "CSC, or Blue Canopy (both of which submitted certificates of no known conflict as part of CSC's proposal) – alerted [him] to [Blue Canopy's incumbent network security] role."  JA177, ¶6. *See also* JA67-68, ¶10.

### H.     GAO's Disposition of the Second Protest

As a result of GSA's OCI waiver, GAO dismissed the OCI aspects of SRA's protest as "academic," in a decision dated December 3, 2013. *SRA Int'l, Inc.*, B-407709.5, B-407709.6, 2013 CPD ¶281 at 6.  JA477-85.

### I.     SRA's CFC Action

Shortly thereafter, on December 9, 2013, SRA filed its Complaint at the CFC.  JA186-204.  SRA alleged that GSA's OCI waiver violated applicable laws and regulations and would result in the unlawful expenditure of FDIC funds on a service contract with CSC.  *See generally* JA196-201.

### J.     CFC Found Jurisdiction

The CFC concluded that it had jurisdiction under 28 U.S.C. § 1491(b) to determine whether the GSA OCI waiver was lawful.  JA24, *26-28.  The CFC framed the threshold question as "whether SRA's challenge to the Waiver is a protest '*in connection with* the issuance or proposed issuance of a task . . . order.'"  JA22, *19 (quoting 41 U.S.C. § 4106(f)(1)) (emphasis in original).  Finding no clear guidance in this Court's precedent, the CFC undertook "a careful analysis of the connectedness of each challenged procurement decision to the issuance or proposed issuance of a task order."  JA23, *21.  According to the CFC, the best evidence that the challenged GSA OCI waiver was not made "in connection with" the award of the Task Order to CSC was its timing (i.e., the waiver was issued 102 days after the TOR award).  JA23, *24-5.  Moreover, the GSA OCI waiver was

- 7 -

wholly discretionary, JA23, *25, as GSA documentation acknowledged that the GSA OCI waiver might be "unnecessary" or even "insufficient" depending upon GAO's decision on SRA's non-OCI protest grounds.  *See* JA181, ¶9.v.  "[W]aivers designed only to short-circuit substantive review of a task order are not necessary for the [task order's] issuance," and so they do not offend the FASA bar on task order bid protests. [3]  JA24, *28.

     After finding jurisdiction, the CFC then sought to end its involvement. JA370 (p.11, ln.4-5).  Having construed its jurisdiction narrowly, the CFC requested that GAO issue an advisory opinion, *see* 4 C.F.R. § 21.11(b), addressing whether the OCI waiver "violated APA standards, and, if so, to adjudicate the merits" of SRA's protest "as if the Waiver had not issued."  JA24, *29.  Although multiple violations of FDIC law and regulation were alleged in SRA's Complaint, the CFC did not ask the GAO to opine on those questions.

     The Government represented that a temporary restraining order ("TRO") "would be unnecessary pending the GAO's advisory opinion, because CSC would not begin working on the ISC-3 Contract, nor would CSC recruit incumbent SRA personnel, during that time."  JA12 (TRO Slip Op. 5).

---

[3] The reference is to the Federal Acquisition Streamlining Act of 1994, 41 U.S.C. § 4106(f), discussed *infra, e.g.,* at note 26 and accompanying text.  FASA forbids CFC protests "in connection with the issuance or proposed issuance of a task or delivery order" with certain exceptions not relevant here.

Nevertheless, while awaiting GAO's advisory opinion, CSC continued to solicit

SRA's current ISC-2 workforce, exacerbating the harm to SRA. *See* JA12-13.

This led the CFC to issue a TRO to prevent this injury, finding SRA prevailed on

all four factors affecting entitlement to injunctive relief. *See* JA8-15.[4]

## K.    GAO's Advisory Opinion

GAO submitted its very brief advisory opinion to the CFC on January

31, 2014, and it was made available to the parties on February 3, 2014. JA2-3.

GAO observed that, under FAR Subpart 9.5, responsibility for determining

whether an OCI exists rests with the procuring agency. JA6. GAO explained that

"[b]ecause the waiver of an OCI is a discretionary agency action, [GAO]'s review

is confined to whether the waiver outlined the extent of the conflict, and whether it

was executed by a duly-authorized individual." JA6. GAO found that the GSA

waiver was not arbitrary or capricious because the FAR's ministerial requirements

had been fulfilled: (i) the GSA FEDSIM Contracting Officer submitted a written

waiver request to the appropriate official, and (ii) the agency's senior procurement

executive duly executed the requested waiver. JA6. There was no mention of

FDIC requirements, only those contained in the FAR.

---

[4] That TRO was dissolved with the CFC's Order dismissing SRA's Complaint.
JA3.

GAO also said that had GSA not issued its waiver, it would have deemed untimely the OCI allegations in SRA's second GAO protest. JA6. SRA did not learn of the OCI until GSA's August 2013 debriefing of SRA.[5] As SRA counsel informed the CFC, on February 3, 2014, SRA raised at the CFC allegations that there were violations of the FDIC's statutes and regulations that at no point in time were addressed by the GAO.[6] JA379 (p.6, ln.22-25; p.7, ln.1-6). GAO's advisory opinion says nothing about any of those issues. JA5-7.

**L.    The CFC Adopted, Without Analysis, GAO's Advisory Opinion & Deemed The Remaining Counts of SRA's Complaint Moot**

On February 3, 2014, in a perfunctory "Final Order" with less than one page of text, the CFC elected to adopt GAO's advisory opinion as the reason to dismiss SRA's "remaining claims" as moot. JA2-3. The CFC then quickly disposed of the case and invited SRA to appeal to this Court. JA368 (p.4, ln.20-25). After inviting Defendant to request dismissal, JA379 (p.5, ln.7-9), Judge Braden said that she had "gone as far as I could for you [SRA] under the authority

---

[5] JA9. SRA filed its first GAO protest on October 22, 2012. JA66, ¶2. OCI was never an issue in the first protest. JA176, ¶e(3).

[6] Nothing known to SRA or its counsel in 2012, during the first GAO protest, could have established that, one year later, Blue Canopy would be on CSC's team, or that CSC or Blue Canopy would fail to disclose the OCI, or that GSA and FDIC would do nothing to identify, investigate, and properly mitigate the OCI, or that CSC and Blue Canopy would falsely assure and certify to the absence of any OCI. JA67-68, ¶10; JA95-97; JA177 at ¶6; JA190, ¶17. All these actions occurred in *2013* and in the context of the *second* ISC-3 procurement. GAO's erroneous timeliness determination is further addressed in Section II.D.6, *infra*.

that I have." JA380 (p.11, ln.21-23). SRA's counsel requested that the CFC

extend its stay. JA380 (p.10, ln.12-15). The CFC rejected this request, and said, in

concluding the hearing, "[y]ou can ask [the Federal Circuit] for a mandamus or to

appeal or whatever you want to do…. But I think I've done all I can do." JA380

(p.12, ln.1-5).[7] Within the hour, the CFC dismissed SRA's protest without

conducting its own independent analysis of the merits of SRA's allegations or of

GAO's advisory opinion. JA2-3. This appeal followed.

## SUMMARY OF ARGUMENT

The Tucker Act, 28 U.S.C. § 1491(b)(1), confers jurisdiction to the

CFC to hear both pre-award and post-award bid protests. The third prong of

§ 1491(b)(1) extends the CFC's jurisdiction to "any alleged violations of statute or

regulation in connection with a procurement or proposed procurement." SRA's

Complaint has alleged five such violations of statute or regulation:

1) The GSA OCI waiver, on which the CFC accepted jurisdiction, did not meet the separate FDIC waiver requirements for conflicts of interest.

2) The GSA OCI waiver was contrary to the FAR and did not satisfy the standards of the APA.

3) Neither GSA nor FDIC can waive FDIC's minimum ethical requirements.

---

[7] CSC then inquired as to when the CFC would end the existing stay "immediately …. Or … as of close of business today". JA380 (p.12, ln.11-13). The CFC responded, "It's quarter to 3:00. If you can let me get off the phone, we can get all of that done." JA380 (p.12, ln.15-16).

4) The violations of FDIC's laws and regulations (and the FAR) would render a contract to CSC illegal.

5) It was a violation of law for GSA to proceed with an illegal contract where a legal alternative was available.

JA196-201.

The Government and CSC will contend that the CFC had no jurisdiction over these allegations, or no more than jurisdiction over the GSA OCI waiver, by reason of FASA's language at 41 U.S.C. § 4106(f). Three prior decisions of this Court, *RAMCOR*,[8] *Impresa Construzioni*,[9] and *Distributed Solutions*,[10] establish that defendants are wrong. FASA precludes Tucker Act protest jurisdiction over allegations that concern the "issuance or proposed issuance of a task or delivery order."[11] But SRA's Complaint does not challenge the "issuance" or "proposed issuance" of a task order. As the CFC correctly recognized, with respect to the GSA OCI waiver, the agency actions that SRA has challenged occurred after award and constitute independent discretionary acts, removed from the issuance of the task order award.

---

[8] *RAMCOR Servs. Group, Inc. v. United States*, 185 F.3d 1286 (Fed. Cir. 1999).

[9] *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324 (Fed. Cir. 2001).

[10] *Distributed Solutions v. United States*, 539 F.3d 1340 (Fed. Cir. 2008).

[11] GAO now has bid protest jurisdiction with respect to task orders valued at more than $10 million, as explained in Section II.B.1, *infra*.

The plain language of the relevant statutes, policy considerations, and this Court's precedent confirm that the FASA jurisdictional bar is limited to events surrounding "issuance or proposed issuance," i.e., in the immediate context of selection and award. Separate, preceding or subsequent actions are not barred. Finding jurisdiction over all of SRA's allegations preserves the purpose and effect of the third prong of the Tucker Act's jurisdiction without injury to the purposes of FASA. SRA's analysis harmonizes the statutes. The Government's position would erroneously limit Tucker Act jurisdiction and foreclose judicial review.

The CFC correctly found jurisdiction over SRA's allegation that the GSA OCI waiver was unlawful. JA24, *28. This challenge was outside the FASA bar because the GSA OCI waiver occurred long after the task order award and represented a separate discretionary GSA action. JA23, *24. The CFC erred in declining to extend this reasoning to the whole of SRA's Complaint.

The CFC did not adjudicate matters properly before it. As to the GSA OCI waiver, the CFC erred by adopting, without independent analysis, the brief GAO advisory opinion. The CFC did not consider any of SRA's other allegations of violation of statute and regulation. Accordingly, upon finding that jurisdiction is present, this Court should vacate and remand to the CFC for adjudication of all of the allegations in SRA's Complaint which will require, *inter alia*, development of the administrative record. SRA also asks for a stay of any expenditure of FDIC

funds for services from CSC until the CFC, upon remand, can determine whether a further injunction is merited.[12]

## ARGUMENT

### I.    STANDARD OF REVIEW

The CFC did not explicitly state whether it granted the Government's oral motion to dismiss under RCFC 12(b)(1) (lack of subject-matter jurisdiction) or RCFC 12(b)(6) (failure to state a claim).  JA3; *see, e.g.*, *Adams v. United States*, 391 F.3d 1212, 1218 (Fed. Cir. 2004)  (discussing standard of review to apply when the CFC fails to state basis for grant of a motion to dismiss).  However, the CFC determined that SRA's "remaining claims" had become moot, JA3, which SRA interprets as a dismissal under Rule 12(b)(1) for lack of jurisdiction.  Whether the CFC properly dismissed a complaint under Rule 12(b)(1) is a question of law.[13]

---

[12] A TRO was in place but was dissolved at the time that the case was dismissed by the CFC.  JA3.  On February 4, 2014, SRA filed with this Court (i) a Notice of Appeal, JA382, and (ii) a Motion for Temporary Stay and for Stay Pending Appeal, JA383-406.  On March 18, the Motions Panel of this Court denied SRA's Stay Motion "[b]ased on the arguments in the motions papers."  Dkt. 41, at 2.  Should SRA prevail on the merits of its CFC allegations, absent a stay substantial sums will be expended on an illegal and potentially void contract and there will be great disruption to restore legally authorized services.

[13] While there are somewhat subtle differences between the standards for dismissal under RCFC 12(b)(1) and 12(b)(6), this Court reviews such dismissals *de novo*. *W. Shoshone Nat'l Council v. U.S.*, 279 Fed. Appx. 980, 984 (Fed. Cir. 2008) (citations omitted).

This Court reviews without deference the legal determinations of the CFC, including its jurisdictional findings, judgments on the administrative record, and grants of motions to dismiss. *See Doe v. United States*, 463 F.3d 1314, 1320 (Fed. Cir. 2006); *Dysart v. United States*, 369 F.3d 1303, 1310 (Fed. Cir. 2004); *Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014). Applying the *de novo* standard, this Court will evaluate agency actions according to the standards of the APA, determining whether they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2012); *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005). To the extent that the CFC's decision involves statutory and regulatory construction, these are questions of law which this Court also reviews *de novo*. *Billings v. United States*, 322 F.3d 1328, 1332 (Fed. Cir. 2003).[14]

---

[14] While this Court examines the CFC's factual findings in a bid protest for clear error, *PAI Corp. v. U.S.*, 614 F.3d 1347, 1351 (Fed. Cir. 2010), the CFC's disposition here included no findings of fact, leaving only legal questions for resolution, under the *de novo* standard.

## II.    THE CFC HAS § 1491(b) JURISDICTION OVER SRA'S ENTIRE COMPLAINT

### A.    The CFC Has Jurisdiction Under § 1491(b) Over Alleged Violations Of Statute And Regulation In Connection With A Procurement Or Proposed Procurement

#### 1.    ADRA Gave the CFC Exclusive Jurisdiction over any Claim in Connection with a Procurement

The 1996 Administrative Dispute Resolution Act ("ADRA"), Pub. L. No. 104-320, 110 Stat. 3870 (amending 28 U.S.C. § 1491(b)), expanded the CFC's bid protest jurisdiction to include jurisdiction that had been exercised by federal district courts applying APA review to violations of statute or regulation in connection with a procurement. *See Impresa Construzioni*, 238 F.3d at 1331.[15] Before ADRA, the CFC's much narrower pre-award bid protest jurisdiction was based upon an implied-in-fact contract that the Government would fairly assess prospective contractors' bids.[16] Following a five-year period during which district courts enjoyed concurrent protest jurisdiction, in 2001, the CFC became the "only

---

[15] Relying upon *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C. Cir. 1970), disappointed bidders could challenge contract awards at the federal district courts "for alleged violations of procurement laws or regulations, or for lack of rationality." *Impresa Construzioni*, 238 F.3d at 1331 (citing *Scanwell* at 876).

[16] *See Impresa Construzioni*, 238 F.3d at 1331 (citing *Keco Industries, Inc. v. United States*, 203 Ct. Cl. 566 (1974).); *Southfork Sys. v. United States*, 141 F.3d 1124, 1132 (Fed. Cir. 1988).

judicial forum [in which] to bring any governmental contract procurement protest" or any APA claim in connection with a procurement.[17]

Under ADRA, the CFC's bid protest jurisdiction encompasses all authority the district courts previously enjoyed to review violations of statute or regulation in connection with a procurement or proposed procurement. *Impresa Construzioni*, 238 F.3d at 1333. "[T]here no longer is ... an independent, APA-based jurisdiction for the district courts in government bid protest cases; rather, Congress effectively subsumed APA jurisdiction of the district courts into the more specific jurisdictional language of [ADRA]."[18]

### 2.    This Court has interpreted § 1491(b) broadly

This Court's decisions in *RAMCOR*, *Impresa Construzioni* and *Distributed Solutions* establish the considerable breadth of third prong § 1491(b)

---

[17] *See Emery Worldwide Airlines v. United States*, 264 F.3d 1074, 1080 (Fed. Cir. 2003). Pursuant to ADRA, the CFC and the district courts had concurrent jurisdiction over bid protests (until 2001), and would "review the agency's decision pursuant to the standards set forth in Section 706 of title 5" of the APA. 28 U.S.C. §§ 1491(b)(1), (b)(4). Further discussion is at Section III.A, *infra*.

[18] *Novell, Inc. v. United States*, 109 F. Supp. 2d 22, 24 (D.D.C. 2000); *see Emery Worldwide Airlines,* 264 F.3d at 1080.

jurisdiction.[19]  As will be shown, the FASA protest bar does not remove this

jurisdiction as to the allegations SRA makes in its CFC Complaint.

a.    *RAMCOR*

*RAMCOR* presented the question of whether the CFC had jurisdiction

to entertain a contractor's challenge to an agency decision to override the

automatic stay triggered by a GAO protest, *see* 31 U.S.C. § 3553(d)(4); *RAMCOR*,

185 F.3d at 1287, an action commonly referred to as a "CICA stay override."[20]

The CFC took a narrow view of § 1491(b)(1) and held that it only had jurisdiction

to review "the merits of the award."[21]  This Court reversed, observing that the

CFC's narrow reading would "render the 'violation of statute or regulation prong'

of [the Tucker Act] superfluous."  *RAMCOR*, 185 F.3d at 1289.  This is the

§ 1491(b) third prong.    This Court continued:

---

[19] Pursuant to § 1491(b)(1), the CFC:

> shall have jurisdiction to render judgment on an action by
> an interested party objecting to a solicitation by a Federal
> agency for bids or proposals for a proposed contract or to
> a proposed award or the award of a contract or any
> alleged violation of statute or regulation in connection
> with a procurement or a proposed procurement.

[20] The Competition in Contracting Act of 1984 ("CICA"), 31 U.S.C. §§ 3551 *et seq.*, directs that a protest of an award automatically stays the award while the protest is pending.  31 U.S.C. § 3553(d)(3)(A).  CICA also provides that the head of the procuring activity may authorize the performance of the contract notwithstanding a protest, if certain requirements are met. 31 U.S.C. § 3553(d)(3)(C).

[21] *RAMCOR*, 41 Fed. Cl. 264, 269 (1998).

> The language of [the third prong of] § 1491(b) … does not require an objection to the actual contract procurement, but only to the "violation of a statute or regulation in connection with a procurement or a proposed procurement."  The operative phrase "in connection with" is very sweeping in scope.  As long as a statute has a connection to a procurement proposal, an alleged violation suffices to supply jurisdiction.

*Id.*  If every § 1491(b) challenge had to include an objection to the merits of the contract award, "the contractor would never need to use the 'violation' [i.e., third] prong."  *Id*.  "A challenge on the merits would, for example, amount to an objection to 'a proposed award or the award of a contract.'"  *Id.*

This Court relied on a basic tenant of statutory construction that, if at all possible, a court must give effect to all of a statute's parts.  *Id.*  This Court held, therefore, that there are violations of law "in connection with a procurement" – in *RAMCOR*, a CICA stay override – which are additional to and distinct from challenges to the merits of the award decision in the same procurement.  *Id.*

The *RAMCOR* Court further explained that, post-ADRA, § 1491(b) granted the CFC jurisdiction to review any agency action in connection with a procurement for violation of the APA.  *Id.*  This Court ruled that ADRA authorized the CFC to perform APA review of the CICA override decision, finding additional

support for jurisdiction because federal district courts had previously exercised

APA jurisdiction to review such agency override actions.[22]

        b.    *Impresa Construzioni*

      *Impresa Construzioni* challenged a proposed award of a base

maintenance and janitorial services contract that plaintiffs contended was illegal

because of violation of various FAR requirements and false certifications.  238

F.3d at 1327.  Similar to SRA's allegations here, JA197, ¶¶34-35, the action at the

CFC involved allegations that the awardee lacked a satisfactory record of integrity

and business ethics required by the applicable regulations and lied on a

certification.  *Id*. at 1329.  Over the opposition of the Government, this Court

found that the CFC had jurisdiction and should have applied APA review to the

Contracting Officer's determination concerning the awardee's responsibility.  *Id*. at

1333.[23]  This Court found that a record of the Contracting Officer's decision-

making was necessary for effective judicial review, so this Court ordered that his

rationale be secured by deposition.  *Id*. at 1339-40.[24]

_____

[22] *RAMCOR*, 185 F.3d at 1289-90.  The Court observed that "an agency may 'violate' [CICA] by issuing a written finding that does not meet the [APA standard]."  *Id*.

[23] Under Section K of the ISC-3 TOR, a contractor that falsely certifies to the FDIC is to be found non-responsible for award.  JA195, ¶29.

[24] Citing Supreme Court precedent which prefers remand to the agency where record supplementation is necessary, *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985), this Court found that *Impresa Construzioni* presented a rare

c.    *Distributed Solutions*

In *Distributed Solutions*, as here, protesters asked the CFC to apply

§ 1491(b) jurisdiction in connection with a procurement involving a task order.

539 F.3d 1340.  The case involved a Government decision to add work to an

existing task order rather than conduct a separate competition.[25]  The protester

objected to the Government's decision to direct a task order awardee to acquire

software rather than use an open competitive procurement process.  *Id.* at 1345.

Although FASA was in effect at the time,[26] the Government did not then raise

FASA as a bar to jurisdiction.[27]  Nor did this Court hold that an exception to FASA

applied.  Rather, this Court accepted jurisdiction and found that the Government's

decision to proceed under its existing task order rather than abide by CICA's

---

case in which a narrow inquiry by deposition of the Contracting Officer was appropriate.  238 F.3d at 1338-40.

[25] The task order at issue in *Distributed Solutions* was under GSA's Millennia government-wide acquisition contract ("GWAC").  539 F.3d at 1342.  GWAC "means a task-order or delivery-order contract for information technology established by one agency for Governmentwide use[.]"  FAR 2.101.  Millennia is the same GWAC under which SRA is currently performing the incumbent ISC-2 work for FDIC.  JA180, ¶10; JA277; JA397 n.1.

[26] FASA was enacted in 1994.  This Court decided *Distributed Solutions* in 2008.

[27] Both the CFC and the GAO, before it, had dismissed Distributed Solutions' protest on a *different* jurisdictional basis, namely that the protester could not challenge the subcontract award decisions of the task order awardee because those were not acts of "government procurement."  *See Distributed Solutions,* 76 Fed. Cl. 524, 528 (2007); *STR, LLC*, B-297421, 2006 CPD ¶11 at 3-4.  STR, LLC and Distributed Solutions joined their GAO actions at the CFC.

- 21 -

competition requirements was an alleged violation of law "in connection with a procurement or proposed procurement." *Id*. at 1345-46. The Court examined whether or not a certain act, i.e., buying subcontractor software, was within the scope of an issued task order. This Court described § 1491(b) jurisdiction as "very sweeping in scope" reaching every challenged agency action in connection with a procurement, "beginning with the process for determining a need for property or services and ending with contract completion and closeout." *Id*. at 1345 n.1.

This Court appropriately applied, in *Distributed Solutions*, an expansive jurisdictional standard as had been applied by district courts under *Scanwell*, 424 F.2d 859. "A non-frivolous allegation of a statutory or regulatory violation in connection with a procurement or proposed procurement is sufficient to establish jurisdiction." *Id*. at 1345 n.1. Focusing on the complaint, this Court found there was "no question" that the protestor had alleged a number of statutory and regulatory violations, including violations of CICA and various FAR requirements. *Id*. at 1345.

In SRA's case, as in *Distributed Solutions*, plaintiffs alleged violations of statute and regulation "in connection with a procurement," which happened to be a task order procurement. As in *Distributed Solutions*, the alleged illegal conduct here is segregable from the issuance or proposed issuance of a task

order, having occurred well after its issuance.  JA23, *24 (*citing Global Computer Enters. v. United States*, 88 Fed. Cl. 350, 410 (2009)).

### B.    FASA Limits But Does Not Eliminate The CFC's § 1491(b) Jurisdiction

### 1.    FASA's Prohibition on Task Order Protests

Enacted in 1994, FASA sought to streamline the federal acquisition process by encouraging acquisition of commercial items and by promoting use of contract vehicles that would allow multiple awards of task and delivery orders.[28] As originally enacted, FASA prohibited all protests "in connection with the issuance or proposed issuance of a task or delivery order" except for a protest alleging an increase in the scope, period, or maximum value of the contract under which the order was issued.[29]  *See* 41 U.S.C. § 253j (1994).  By enactment of the National Defense Authorization Act ("NDAA") for Fiscal Year 2008, Congress permitted protests of any task or delivery order valued in excess of $10,000,000, but provided jurisdiction for such protests only at GAO.  41 U.S.C. § 253j (2008).[30]

---

[28] *Global Computer*, 88 Fed. Cl. at 404 (finding FASA did not bar the contractor's protest simply because a task order was involved, and referencing S. Rep. No. 103-259, at 1 (1994)).

[29] These exceptions are not relevant here.

[30] That provision on protest jurisdiction expired by its terms three years later.  At that time, the CFC and GAO issued opinions reviewing the plain statutory language and found that the entire FASA task order bid protest bar disappeared on

## 2.    A Textual Comparison of the Tucker Act and FASA

This case presents the question of how to interpret seemingly similar language in the Tucker Act and FASA.[31]  The operative, third prong language in the Tucker Act, at 28 U.S.C. § 1491(b)(1), is that the CFC "shall have jurisdiction to render judgment on an action by an interested party objecting to … any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  The relevant FASA language is that protests at the CFC are "not authorized in connection with the issuance or proposed issuance of a task or delivery order".  41 U.S.C. § 4106(f).

The Tucker Act language that confers "third prong" jurisdiction to the CFC includes words and phrases that are more general or broader than the FASA phrasing.  Several words denote expansive rather than restrictive meaning.  The word "any" set before "alleged violation" necessarily indicates an intent not to limit.  Usage of the conjunction "or" to connect "statute or regulation" and

---

the "sunset date" of May 27, 2011.  *See MED Trends v. United States*, 102 Fed. Cl. 1, 6 (2011); *Technatomy Corp.*, B-405130, 2011 CPD ¶107, at *6-7.  The current FASA bar on task order bid protests for civilian agencies was revived on December 31, 2011, as part of the 2012 NDAA, and the sunset provision extended GAO's exclusive task order jurisdiction until September 30, 2016 for civilian agency procurements.  Pub. L. No. 112-81, § 813, 125 Stat. 1491 (codified at 41 U.S.C. § 4106(f)).

[31] This case is believed to be the first before this Court where the Government has chosen to challenge jurisdiction based upon the FASA bar.  The Government could have raised this defense over six years ago, in *Distributed Solutions*, but apparently chose not to.  See discussion at II.A.2.c, *supra*.

"procurement or a proposed procurement" is consistent with an interpretation of breadth not constraint.

This Court, when considering the breadth of § 1491(b) jurisdiction, uses the expansive definition of "procurement" from 41 U.S.C. § 403(2) (reorganized into 41 U.S.C. § 111).  That statute provides that "'procurement' includes all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout."  *Distributed Solutions*, 539 F.3d at1345.

In contrast, the FASA language is limited.  Protests are excluded if "in connection with the issuance or proposed issuance" of a task or delivery order.  The word "issuance" is defined as "an act of issuing: issue."[32]  Because the "act" of issuance is one that is temporally limited, a plain language interpretation of the FASA provisions applicable to this appeal would apply the bar to protests that concern the issuance (i.e., award) of a task or delivery order, not to all acts, however far removed from issuance that might affect a task order.

Both FASA and the Tucker Act use the phrase, "in connection with," but the subject and object differ materially.  For FASA, the subject is a "protest"

---

[32] "Issuance," The American Heritage Dictionary 680 (2d College ed. 1985); *see also* "Issuance," Merriam-Webster Online Dictionary. 2014. http://www.merriam-webster.com/dictionary/issuance (10 March 2014) ("the official act of making something available or of giving something to people to be used:  the act of officially issuing something.").

and the object is "issuance or proposed issuance of a task order".  For the Tucker

Act, the subject is "any alleged violation of statute or regulation" and the object is

"a procurement or a proposed procurement".  Hence, the language of the Tucker

Act results in a very broad "frame" of jurisdiction, within which there is a

comparatively small area of jurisdiction excluded by FASA.

      This construction reconciles the Tucker Act and FASA.  Section

1491(b)(1) establishes broad jurisdiction at the CFC over alleged violations of

statute or regulation that have a nexus to ("in connection with") either a

"procurement or proposed procurement."  Excluded from this jurisdiction,

however, are "protests" about the "issuance or proposed issuance of a task or

delivery order."  Hence, if an action is properly brought under § 1491(b)(1) that is

outside the area of exclusion, the CFC has jurisdiction even if the form of

"procurement or proposed procurement" happens to be a "task or delivery order."

Such was the case in *Distributed Solutions*, and such is the case here.

### 3.  Comparing FASA to the Three Prongs of Tucker Act Jurisdiction

      The FASA bar affects all three prongs of Tucker Act bid protest

jurisdiction but that effect is limited to allegations that concern the acts of

"issuance or proposed issuance" of a task or delivery order.  The first prong is

jurisdiction as to "… a solicitation by a Federal agency for bids or proposals for a

proposed contract …"  FASA operates to exclude jurisdiction if an objection is

made to a solicitation for award of a proposed contract that is a task or delivery order.  The second prong is jurisdiction as to "… a proposed award or the award of a contract …".  FASA applies as protests are not authorized in connection with "… the issuance or proposed issuance of a task or delivery order …".  As to the third prong, as noted, the Tucker Act confers jurisdiction over "… any alleged violation of statute or regulation in connection with a procurement or a proposed procurement…".  Where the alleged violation goes to the "issuance or proposed issuance" of a task or delivery order, the FASA bar applies.  Where the alleged violation concerns acts that are temporally separated, or represent independent exercises of agency discretion distinct from issuance or proposed issuance, then FASA is not invoked and jurisdiction is present under the third prong.  Under well-established principles of statutory construction, courts are loath to construe any statutory provision in a way that would render it ineffectual.[33]  The limitations upon bid protest jurisdiction affected by FASA do not speak to and need not constrain third prong jurisdiction.

---

[33] *See Hibbs v. Winn*, 542 U.S. 88 (2004) ("The rule against superfluities instructs courts to interpret a statute to effectuate all of its provisions"); *PBGA, LLC v. United States*, 389 F.3d 1219 (Fed. Cir. 2004) (considering whether injunctive relief rationale rendered 28 U.S.C. § 1491(b)(3) superfluous).

**4.**    ***RAMCOR*, *Impresa Construzioni* and *Distributed Solutions* Confirm that SRA's Claims are Within Third Prong Jurisdiction under § 1491(b)**

As noted, this Court's decisions in *RAMCOR*, *Impresa Construzioni* and *Distributed Solutions* demonstrate that all of SRA's claims are within the CFC's § 1491(b) jurisdiction.  All of the violations SRA has alleged are separate and distinct from the "issuance or proposed issuance" of a task order.

The CFC was correct to conduct an analysis of the "connectedness" of each challenged procurement decision to the issuance or proposed issuance of the task order.  JA23, *21.  Its error was to construe § 1491(b) jurisdiction too narrowly – just as occurred in *RAMCOR* and *Distributed Solutions*, where this Court found § 1491(b) jurisdiction where the CFC had not.  Had the CFC taken its analysis to its logical conclusion, it would have found jurisdiction over all of SRA's allegations.  Instead, the CFC only took jurisdiction over the OCI waiver decision made 102 days after task order issuance.  Every claim in SRA's Complaint challenges actions by GSA and/or FDIC taken after GSA decided to issue an award to CSC.[34]  As shown below, all of the alleged violations of statute and regulation were in connection with the ISC-3 procurement, but none were in

---

[34] JA196-97, ¶¶32-38 (Count I); JA197-98, ¶¶40-46 (Count II); JA199-200, ¶¶48-54 (Count III); JA200-01, ¶¶56-61 (Count IV); JA201, ¶¶63-65 (Count VI).

connection with the issuance (or proposed issuance) of the ISC-3 task order.  Thus, the CFC had jurisdiction over all of SRA's Complaint.[35]

**C.    SRA Has Alleged Violations Of Statute And Regulation In Connection With A Procurement Or Proposed Procurement**

Each of the five counts in SRA's Complaint alleges a "violation of statute or regulation in connection with a procurement or a proposed procurement." Therefore, all of SRA's alleged violations of statute or regulation were within the CFC's § 1491(b) jurisdiction.  None concern the already-concluded issuance of the ISC-3 task order and therefore none are excluded by FASA.

**1.    SRA's First Two Counts Allege that the GSA OCI Waiver Violates FDIC Law and Regulation and the FAR.**

The first two counts of SRA's Complaint relate to GSA's OCI waiver and allege different injuries arising from it.  Count I contends that it is a violation of FDIC law and regulation for GSA to waive CSC's OCI without satisfying the separate (and, in case of conflict with the FAR, controlling) FDIC requirements. SRA alleges in this Count that GSA violated FDIC's laws and regulations

---

[35] The *RAMCOR* decision found support for jurisdiction, in part because district courts had previously taken jurisdiction over the same allegations under *Scanwell*. 185 F.3d at 1289-90.  In *Corel Corp.*, 165 F. Supp. 2d 12, 22 (D.D.C. 2001), decided after *RAMCOR* and prior to the end of concurrent district court protest jurisdiction under § 1491(b), the District Court analyzed the interplay of FASA and ADRA, looking to *RAMCOR* and CFC decisions.  The court concluded that by alleging a CICA violation, Corel had satisfied the Tucker Act's jurisdictional requirements and that FASA did not eliminate such jurisdiction since Corel's challenge was not to the issuance or proposed issuance of a delivery order.  165 F.Supp. 2d at 22.

governing ethics, integrity and conflicts of interest found at 12 U.S.C § 1822(f)(3)

and § 1822(f)(4)(i), as well as implementing regulations at 12 C.F.R. Part 366.[36]

Those FDIC regulations clearly put it beyond GSA's authority to make

determinations concerning contractor integrity and conflicts of interest; as concern

such FDIC requirements, those decisions must be made by FDIC.  12 C.F.R.

§ 366.8.

SRA's Count II alleges that GSA's OCI waiver did not fulfill FAR

9.503's requirements, where the D&F failed to describe the extent of CSC's OCI.

JA197- 98, ¶¶39-46.  SRA contends that the written findings upon which the GSA

OCI waiver was premised withheld material information, giving GSA's Senior

Procurement Executive an incorrect understanding of the facts and law applicable

to the OCI waiver.  JA198, ¶¶44-45.  Like the CICA override waiver challenged in

*RAMCOR*, SRA contends this written justification did not satisfy the APA review

standard.  *See RAMCOR,* 185 F.3d at 1290.

### 2.    SRA's Third and Fourth Counts Allege Violations of FDIC Law and Regulations Because CSC's False Certifications Do Not Meet the FDIC's Minimum Ethical Standards

The third and fourth Counts of SRA's Complaint allege violations of

statute and regulation independent of the GSA OCI waiver.  In Count III, SRA

---

[36] JA196, ¶¶32-38; *see also* JA340-47(cataloguing relevant FDIC laws, regulations, policies and procedures).

alleged it is beyond GSA *or* FDIC authority to excuse the false certifications

submitted by CSC and Blue Canopy.  GSA admitted to the false certifications in

the D&F that accompanied the OCI waiver of November 25, 2013.  JA177, ¶6.

The false certifications are actions that do not meet FDIC's minimum ethical

standards, and therefore award to CSC is prohibited.  JA200, ¶52.  SRA contends

CSC and Blue Canopy violated 12 C.F.R. §§ 366.14 and 366.12(e)(2) and that,

while FDIC may waive conflicts of interest (12 C.F.R. § 366.8), neither FDIC nor

GSA may waive FDIC's minimum ethical standards under 12 C.F.R. § 366.12.

JA199, ¶50-52.

      Count IV alleges that because CSC's and Blue Canopy's certifications

were a prerequisite to eligibility and were false, any contract awarded to CSC

would be premised upon a violation of statutes and regulations and therefore *void*

*ab initio*.  JA201, ¶¶59-60.  As demonstrated in SRA's Memorandum of Points and

Authorities in support of SRA's TRO Application, which was submitted with its

Complaint, a false OCI certification also violates 18 U.S.C. §§ 287, 1001 and 1007

in addition to the FDIC laws and regulations referenced above.  JA228-29.  Illegal

actions, SRA has explained, cannot be ratified and any contract premised upon

them is a nullity.  *See Trilon Educ. Corp. v. United States*, 217 Ct. Cl. 266, 274

(1978) ("where the departures from applicable statutes and regulations [are] both

obvious to the bidder and … substantial," the contract will be deemed "void *ab initio*").[37]

### 3. SRA's Sixth Count Alleges an Award to CSC Violates Law Where a Legal Alternative is Available

SRA's Count VI contends that it is arbitrary, capricious and unreasonable for GSA, once informed of the illegality of proceeding with CSC, to proceed to procure the services from CSC where legal procurement options are available. JA201. This Court, in *Distributed Solutions*, and the District Court, in the *Corel* case, similarly accepted jurisdiction over challenges that an Agency violated CICA when it selected one of several procurement alternatives without resort to a competitive process. *Distributed Solutions*, 539 F.3d at 1345; *Corel*, 165 F. Supp. 2d at * 20-21.

---

[37] Because all "government contracts must comply with statutorily sanctioned regulations," a contract which is "plainly illegal" is a nullity and void *ab initio*. *Total Medical Mgmt. v. United States*, 104 F.3d 1314, 1319 (Fed. Cir. 1997); *United States v. Amdahl Corp.*, 786 F.2d 387, 392 (Fed. Cir. 1986) (holding that a procurement contract award in conflict with statute and regulation was void *ab initio*). A contract is "plainly illegal" when made contrary to statute or regulation or when the contractor is on "direct notice that the procedures being followed were violative of such requirements." *Amdahl*, 786 F.2d at 395.

**D.    The Government's And CSC's Objections To Jurisdiction Are Unpersuasive**

**1.    FASA does not bar all § 1491(b) Jurisdiction over Task Orders**

Defendants argued before the CFC (and a motions panel of this Court) that FASA bars jurisdiction over *any* claim with an articulable nexus to a task order.[38]  Their position goes too far.  If the Government is correct, then the CFC could not exercise § 1491(b)'s third prong jurisdiction over any violation of statute or regulation with any relationship to a task order procurement even if such violation had nothing to do with "issuance" or "proposed issuance" of a task or delivery order.

Thus, the Government's position would unnecessarily disable § 1491(b)'s third prong jurisdiction.  It cannot be reconciled with the plain language of the statutes analyzed above.  Nor can the Government point to any evidence that Congress intended this result.  While waivers of sovereign immunity must be construed narrowly, it is "unlikely that Congress would intend [a] statute to deny a pre-existing remedy without providing a remedy under the new statute." *Resource Cons. Group v. United States*, 597 F.3d 1238, 1246 (Fed. Cir. 2010) (*citing Davis v. Passman*, 442 U.S. 228, 247(1979).).[39]  ADRA transferred to the

---

[38] *E.g.*, JA290; JA354; DOJ Opp. to Stay, Dkt 25 at 12.

[39] This Court held that the CFC's implied-in-fact bid protest jurisdiction under 28 U.S.C. § 1491(a) survived post-ADRA and applied to non-procurement contracts.

CFC under § 1491(b) the broad APA jurisdiction district courts had exercised

reviewing government decisions under *Scanwell*, 424 F.2d 859, since 1970, so that

every claim of illegal agency action in connection with a procurement must now be

heard by the CFC.[40]

### 2.    Jurisdiction is not limited to the OCI waiver

The Government and CSC contend that jurisdiction, if present, was

limited to CFC review of the GSA OCI waiver.[41]  This aligns with the CFC's

ruling.[42]  They argue that if there was jurisdiction to consider the OCI waiver and

SRA prevailed, SRA would have been allowed to "return" to GAO on "remand."[43]

This argument is illogical.  If there is jurisdiction over the waiver, it is because

§ 1491(b) jurisdiction can reach violations of statute and regulation despite some

nexus to a task order (provided that such violations are not in connection with the

issuance or proposed issuance of a task order).  And, once allowed, Defendants

cannot justify why that jurisdiction applies to one *post-issuance act* (the waiver)

but not others.  There is no difference, analytically, between violations of statute or

---

Since that jurisdiction was not subsumed within the language of § 1491(b), and
there was no clear legislative intent to withdraw pre-existing jurisdiction, this
Court was unwilling to assume Congress intended to remove pre-existing
jurisdiction.  597 F.3d at 1246.

[40] See discussion at Section II.A.1, *supra*.

[41] DOJ Opp. to Stay, Dkt 25 at 11; CSC Opp. to Stay, Dkt 24 at 7.

[42] JA24, *28.

[43] JA422.

regulation arising from the post-task order issuance of the GSA OCI waiver and other alleged violations that similarly occurred well after GSA issued the task order. Those violations are in the decisions of the GSA and FDIC to proceed with CSC even after GSA twice acknowledged, in its September 25, 2013 Agency Report, JA67-68, ¶10, and in its November 25, 2013 D&F, JA177 at ¶6, that CSC and Blue Canopy submitted false certifications as to absence of conflicts.

Before the CFC, the Government also argued that jurisdiction was limited if the relief requested would have any affect upon a task order.[44] The Government offers no support for this construct that would turn the logic of jurisdiction "on its head." If jurisdiction is present, then flowing from that jurisdiction is the power of the court to act to remedy a violation of statute and regulation. SRA has found no decision of this Court decoupling jurisdiction under § 1491(b) from the power to grant relief.

### 3. Accepting "Third Prong" Jurisdiction will not "Open the Floodgates" to Bid Protests Against the Issuance of Task and Delivery Orders.

The Government claimed before the CFC that the intent of Congress would be violated were the Court to find jurisdiction over SRA's Complaint.[45] The

---

[44] *E.g.,* JA364 (contending jurisdiction is precluded where the "relief sought" would "disturb the agencies' task order awards").

[45] *See* JA365 (contending "every clause and word of a statute" must be given effect, but failing to recognize that allowing the specific and narrower FASA

Government also argued that SRA's reading would "swallow the rule" of FASA.[46]

The Government is incorrect.

Introduced in the U.S. Senate in 1993, FASA was designed to address the various acquisition statutes that had rendered the federal procurement system complex and unwieldy.[47]  In part, FASA "revise[d] and simplif[ied] the bid protest process with a view towards reducing the number of protests that are filed."[48] Congress also intended that-

> *All otherwise applicable provisions of law would remain applicable to such acquisitions*, except to the extent specifically provided in [10 U.S.C. § 2304a].  For example, the requirements of the [CICA], although they would be inapplicable to the issuance of individual orders under task and delivery order contracts, would continue to apply to the solicitation and award of the contracts themselves.

H.R. Rep. No. 103-712, at 178 (1994) ("Conf. Rep.") (emphasis added).  In *Global Computer*, the CFC, recognizing relevant legislative history, accepted jurisdiction over a protest challenging a modification to a task order as contrary to CICA; the court concluded that FASA barred protests "in connection with" either the

---

exception to swallow whole the broad grant of § 1491(b) jurisdiction violates that fundamental canon).

[46] JA296.

[47] *Global Computer*, 88 Fed. Cl. at 404-05 (citing S. Rep. No. 103-258, at 3 (1994) and 140 Cong. Rec. 23885 (1994)).

[48] *Id.* at 405 (quoting S. Rep. No. 103-259 (1994), at 7).

"issuance" or "proposed issuance" of a task order – but not modifications thereto.[49]

The CFC then explained that while FASA was intended to revise and simplify the

bid protest process,

> Congress explicitly tailored the legislation to ensure that those "objectives would be accomplished *without undermining the key features of the current procurement statutes, such as full and open competition and an effective bid protest process, that have been established over the years to safeguard the acquisition system and prevent abuse.*" S. Rep. No. 103-258, at 3 (emphasis added). Thus, while Congress extended to contracting officers "wide latitude" so that they" will not be constrained by CICA requirements in defining the nature of the procedures that will be used in selecting the contractor to perform a particular task order," *id.* at 16, it simultaneously cautioned that task order contracts "must be structured carefully to ensure that *they are not abused to avoid competition and funnel money to favored contractors*," 140 Cong. Rec. 23877 (1994) (emphasis added).

*Id.* at 413 (emphasis in original). FASA's legislative history exhibits no intention

to truncate third prong jurisdiction as conferred under § 1491(b).

As explained, SRA's analysis correctly harmonizes the sweeping

breadth of § 1491(b) jurisdiction with the FASA task order protest bar. FASA is

respected. An alleged violation of statute or regulation, if "in connection with the

*issuance* or *proposed issuance* of a task or delivery order," would be subject to the

bar. But jurisdiction is present as to allegations, as here, that separate or

---

[49] *Id.* at 412-13.

subsequent Government actions, *not* connected to the issuance or proposed

issuance of a task order, violate statute and regulations.  Thus, the CFC was correct

to examine the "connectedness" of each challenged action to the issuance or

proposed issuance of the task order.  As demonstrated above, this Court's

*RAMCOR* and *Distributed Solutions* decisions confirm SRA's analysis.

### 4.    Neither the Government nor CSC have Distinguished *Distributed Solutions* or Explained Why it is Not Controlling

Despite filing three briefs challenging jurisdiction, JA271-302;

JA348-66; JA407-49), the Government has still not explained how denial of

jurisdiction here can be reconciled with *Distributed Solutions*.[50]

In its Motion to Dismiss SRA's Complaint, at the CFC, the

Government tellingly never cited to any of this Court's decisions interpreting

§ 1491(b) jurisdiction.  Responding to SRA's criticism of this failure, the

Government's Reply did not analyze *Distributed Solutions*; instead, it quoted a

CFC opinion for the flawed proposition that "the FASA bar was neither implicated

---

[50] Before the motions panel, CSC claims *Distributed Solutions* and *RAMCOR* are distinguishable because they are *both* CICA override cases.  CSC Opp. to Stay, Dkt 24 at 11.  CSC misstates the cases.  *RAMCOR* was a CICA override case.  185 F.3d 1286.  *Distributed Solutions*, however, had nothing to do with a CICA *override*, but rather the Government's failure to fulfill CICA's mandate for full and open competition.  539 F.3d at 1344-45.

nor discussed." JA361.[51]  The Government's entire analysis of this Court's most

relevant decisions in its Opposition to SRA's Motion for Emergency Stay here

simply regurgitated this erroneous assertion in a footnote.  JA424, n.7.

### 5.    SRA's Reconciliation of ADRA and FASA Aligns with Most CFC Decisions

A review of the entire body of relevant CFC decisions shows SRA's

jurisdictional analysis preserves the results in the great majority of jurisdictional

decisions cited by the parties at the CFC.[52]

Several CFC decisions reached the right result, per FASA, in

declining jurisdiction over protests in connection with the issuance or proposed

issuance of a task order.  *E.g., A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl.

126, 130 (2006) (challenge to scoring of task order proposals and best value

---

[51] In support, the Government cited *DataMill v. United States*, 91 Fed.Cl. 740, 760 (2010).  While the CFC discussed *Distributed Solutions* in *DataMill*, the CFC was simply wrong in saying that *Distributed Solutions* did not implicate a task order procurement.  *DataMill*, at 760, states that "*Distributed Solutions, Inc.* is factually distinguishable because that protest did *not* involve the 'issuance' or 'proposed issuance' of a task or delivery order".  (Emphasis added.)  This is contradicted by, *Distributed Solutions*, at 1344, as the decision states that "the crux of the protest…is not the choice of issuing a task order…*it is the government's decision to utilize a task order*…to allow [the task order contractor] to procure software for the government without competition instead of…through competitive means".  (Emphasis added.)

[52] SRA's analysis reconciles the results of the CFC decisions, but not the rationales.  The CFC has recognized "[t]here seems to be some variation in this court's approach to interpreting the term 'in connection with' when applying the ban on task order protests in particular cases."  *BayFirst Solutions, LLC v. United States*, 104 Fed. Cl. 493, 502(2012)

determination).[53]  The CFC also has held correctly that it has jurisdiction to review

CICA override decisions in the context of task order procurements.  *E.g. Unisys*

*Corp. v. United States*, 90 Fed. Cl. 510, 517 (2009) ("this lawsuit does not concern

the task order itself, but merely whether" the Agency violated CICA)[54].  The CFC

also found, consistent with *Distributed Solutions*, that FASA did not eliminate its

authority to consider some pre-award violations of law or regulation under

§ 1491(b)'s third prong.  *See McAfee, Inc. v. United States*, 111 Fed. Cl. 696, 707

(2013) (jurisdiction found over standardization decision not tied to any single

solicitation).[55]  The CFC has also stated that the FASA bar has no effect on

---

[53] *See also Solute Consulting v. United States*, 103 Fed. Cl. 783, 787-88 (2012) (no jurisdiction and contesting "scope" change that CFC viewed as simply an evaluation challenge); *Chameleon Integrated Svcs., LLC v. United States*, 111 Fed. Cl. 564, 569 (2013) (no jurisdiction in protest contesting fairness of decision to level the playing field by disclosing prices and alleging evaluation error).  *MED Trends, Inc. v. United States*, 102 Fed. Cl. 1, 7 (contending agency's price and best value analyses were flawed).  Because *MED Trends* was decided during a period when the FASA bar had lapsed, CFC concluded that in the absence of subsection (f), there was nothing that prevented the court from exercising its general bid protest jurisdiction under 28 U.S.C. § 1491(b)(1).

[54] S*ee also Solutions by Design Alliant Joint Venture, LLC v. United States*, 2013 U.S. Claims LEXIS 601, *5 (2013) (taking § 1491(b) jurisdiction in CICA override protest); *Analysis Group, LLC v. United States*, 2009 U.S. Claims LEXIS 347, *4-7 (2009) (taking § 1491(b) jurisdiction in CICA override protest and applying APA review).

[55] *See also Savantage Fin. Svcs., Inc. v. United States*, 81 Fed. Cl. 300 (2008) (same); *Mori Assocs. v. United States*, 102 Fed. Cl. 503, 533-34 (2011) (jurisdiction over pre-solicitation decision whether procurement should be small business set aside); *Weeks Marine, Inc. v. United States*, 79 Fed.Cl. 22, 24-25 (2007), *rev'd on other grounds* 575 F.3d 1352 (Fed. Cir. 2009)(jurisdiction over

challenges to post-award actions that violate law or regulation.  *See Mori Assocs. v. United States*, 113 Fed. Cl. 33, 38 (2013) ("Procurement decisions that are made after task orders have been issued are similarly not affected by the FASA prohibition.")[56]; *see also* JA 23, \*24 (citing *Global Computer*, 88 Fed. Cl. at 410-15, in which CFC took jurisdiction over a modification to a task order award). A few CFC decisions have conducted a claim-by-claim jurisdictional examination of the "connectedness of each challenged procurement decision to the issuance or proposed issuance of a task order."  JA23, \*21 (correctly accepting jurisdiction over the OCI waiver but erroneously failing to do so over SRA's other claims); *BayFirst*, 104 Fed. Cl. at 503-08 (finding jurisdiction over decision to cancel solicitation because it is distinct from the issuance of a task order, but no jurisdiction over, *inter alia*, the fairness of evaluation).[57]

---

choice to use task order rather than sealed bidding).  *But see DataMill* 91 Fed.Cl. at 759-60 (finding jurisdiction absent as a pre-solicitation decision is in connection with a proposed task order procurement, without resolving the textual differences in FASA and ADRA).

[56] In *Mori*, CFC reviewed a pre-award protest challenging the Government's decision to obtain services using a procurement vehicle under which protester could not compete.  113 Fed. Cl. at 35.

[57] *See also Global Computer,* 88 Fed. Cl. at 414-15 (finding Congress did not prohibit protests in connection with a task order, but only in connection with issuance or proposed issuance); *Mori Assocs. v. United States*, 113 Fed. Cl. 33, 37-38 (2013) (noting earlier related decision found jurisdiction over alleged violation of logically distinct small business rule violation, but finding no jurisdiction over the choice between two potential IDIQ vehicles).

The great weight of CFC authority properly concludes that some part of § 1491(b) jurisdiction survives outside FASA.  The question is where to draw the line between decisions that are "in connection with" a procurement or proposed procurement and those that are "in connection with" the issuance or proposed issuance of a task order.  *See BayFirst*, 104 Fed. Cl. at 508.  The Government misreads *Distributed Solutions* as not implicating a task order procurement, and from that flawed premise justifies a conclusion – that FASA bars *every* claim in connection with a task order procurement – which is contrary to the great weight of CFC precedent.

### 6.    Jurisdiction is not Defeated because the GAO Considered SRA's OCI Allegations to be Untimely.

Relying upon GAO's advisory opinion, the Government and CSC likely will contend that SRA's alleged untimeliness defeats CFC jurisdiction.  These arguments are unavailing.  First, SRA's August 2013 GAO protest was a challenge "in connection with the issuance" of the ISC-3 task order to CSC.[58]  As such, it is not within the CFC's jurisdiction, by reason of the FASA bar, but was within GAO'S jurisdiction.  Second, SRA timely raised every allegation in its

---

[58] SRA did not learn of the OCI until informed of Blue Canopy's role at the August 2013 debrief that followed the GSA's award to CSC.  JA189, ¶13; JA216, ¶4.

Complaint at issue here.[59]  Third, the notion that SRA was under some obligation

to make these allegations to GAO simply ignores relevant statutes.[60]  Lastly, the

GAO's views on the timeliness (vice the merits) of SRA's OCI allegations, which

were not solicited by the CFC or the parties, were poorly reasoned and contrary to

the GAO's own rules and precedent.[61]

## III.  THE CFC FAILED TO ADJUDICATE ALLEGATIONS WITHIN ITS JURISDICTION

Should this Court agree that jurisdiction has been established for each

of the Counts in SRA's Complaint, the inquiry then is whether the allegations

before the CFC were adjudicated.  The CFC, unsure of its jurisdiction, relied upon

---

[59] The operative facts relevant to the allegations in SRA's CFC Complaint were not learned until well after issuance of the task order.  Not until receipt of the Agency Report in September 2013 did SRA learn of the false assurances and certifications as to absence of OCI.  JA67-68, ¶10; JA93; JA95-101; JA190, ¶17.  In November 2013, when GSA took the OCI waiver action, and released the supporting D&F, GSA confirmed the false certifications.  JA177, ¶6.  The actions to which SRA objected, namely proceeding with CSC despite its false certifications, and failing to act to employ legal alternatives, occurred only after the GSA admitted the existence of the false certifications when it issued the OCI waiver.

[60] 31 U.S.C. § 3556 ("…nothing contained in this subchapter shall affect the right of any interested party to file a protest with the contracting agency or to file an action in the United States Court of Federal Claims.")

[61] Had SRA protested the Blue Canopy OCI before its debriefing following the second award decision, GAO would have dismissed its protest as speculative and premature.  *See* 4 C.F.R. §21.2(a)(2) (excepting solicitation defects, any protest brought before a requested and required debrief is premature); *see also REEP Inc.*, B-290688, 2002 CPD ¶158, at *2. Moreover, GAO did not have SRA's Complaint before it and could not opine on SRA's allegations of violation of statute and regulation that occurred post-award.  See discussion at Section III.B.1.c, *infra*.

- 43 -

the GAO advisory opinion to determine that the GSA OCI waiver was valid and that SRA's "remaining claims" were "moot." JA3. This was the extent of the CFC's adjudication on the merits.

### A.    Courts Must Adjudicate Matters Properly Pled And Within Their Jurisdiction

Courts are obliged to rule upon claims within their jurisdiction. *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976) (finding courts have a "virtually unflagging obligation" to resolve controversies within their jurisdiction). In fact, "[j]udicial power is inseparably connected with the judicial duty to decide cases and controversies []." *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1014 (10th Cir. 2004), *aff'd*, 546 U.S. 418 (2006). This Court has followed Supreme Court precedent to find that when a court has jurisdiction, it must consider and resolve the issues before it.[62]

The CFC is the only judicial forum with jurisdiction over SRA's allegations, as district courts no longer have APA jurisdiction over violations of statute and regulation in connection with a procurement or a proposed

---

[62] *Toews v. United States*, 376 F.3d 1371, 1381 (Fed. Cir. 2004) (responding to the government's argument that the case involving a federal taking should be decided by the California state courts, "[C]ourts have a duty to decide the cases before them whenever it reasonably can be done." The Federal Circuit decided the case on the merits. As recognized in *Toews*, both jurisprudential and practical reasons compel courts to fully adjudicate matters properly before them. *Id.*

procurement.[63]  Thus, if the CFC fails to adjudicate a matter properly before it,

potential violations of law will escape judicial review.

**B.     The CFC Did Not Adjudicate Matters Properly Pled By SRA And Within Its Jurisdiction**

**1.     By Adopting an Erroneous GAO Advisory Opinion, the CFC Failed to Independently Adjudicate Counts I and II of SRA's Complaint**

The GSA's OCI waiver figured in only *two* of the five allegations

(Counts I and II).  Counts III, IV and VI could not be resolved by the GSA OCI

waiver determination.  All involved actions taken by GSA or FDIC long after the

decision to issue the ISC-3 award to CSC and also after the date that GSA

acknowledged, in the OCI waiver D&F, JA177, ¶6, that CSC and Blue Canopy had

submitted false certifications in violation of specific TOR requirements and FDIC

laws and regulations.  Yet the CFC addressed only the GSA OCI waiver in

requesting an advisory opinion from the GAO and then in deciding, because the

GAO had no objection to the GSA OCI waiver, that "SRA's remaining claims are

moot."  GAO's analysis as to validity of the OCI waiver under the FAR follows:

> Because the waiver of an OCI is a discretionary agency
> action, our review is confined to whether the waiver

---

[63] *See* Section II.A.1, *supra*.  GAO has bid protest jurisdiction under CICA, but its authority is only advisory.  It has no power to enjoin illegal actions.  31 U.S.C. § 3554(b); *Centech Group, Inc. v. United States*, 78 Fed. Cl. 496, 507 (2007) ("Because the Comptroller General may only 'recommend' a remedy upon finding a procurement violation, GAO's rulings do not legally bind the parties to a bid protest.").

outlined the extent of the conflict, and whether it was executed by a duly-authorized individual. *The Analysis Group, LLC, supra*, at 7; *CIGNA Gov't Servs., LLC, supra*, at 14.

Here, the record reflects that the contracting officer prepared and submitted a written waiver request to the appropriate official that outlined all of the facts and circumstances that the protester believed indicated the existence of an OCI and the extent of the conflict; provided a detailed discussion of the bases for his conclusion that any possible conflict was exceedingly remote and unsubstantiated; and concluded that, under the totality of the circumstances, a waiver would be in the best interest of the government. The requested waiver was then duly executed by the agency's senior procurement executive, as authorized by FAR § 9.503. Accordingly, we do not find GSA's waiver decision to be arbitrary or capricious. *See Turner Constr. Co. v. United States*, 94 Fed. Cl. 561, 584-85 (2010), *aff'd*, 645 3.d 1377 (Fed. Cir. 2011).

As a final matter, we note that had the agency not executed a waiver of the OCI (and thus we had not dismissed this aspect of SRA's protest as academic), we would have found the issue untimely and not considered the merits of SRA's unequal access to information OCI allegation.

JA6.  Despite the clear shortcomings in GAO's advisory opinion (addressed below), the CFC expressed no *independent* opinion on Counts I and II of SRA's Complaint as it took the GAO's opinion as the "last word."  Initially, it was improper for the CFC to adopt the advisory opinion without exercising

independent judgment after review of that opinion.[64]  The CFC's actions were

improper for several additional reasons, as well.

> a.   Rather Than Remand to FDIC for its Analysis of Ethics
>       and Integrity Issues, the CFC Sought a GAO Advisory
>       Opinion on the OCI Waiver

The FDIC's regulations clearly contemplate that the FDIC has

authority to review and decide upon issues of integrity, conflict of interest and

ethics that may arise under its laws and regulations.  12 C.F.R. Part 366.

Specifically, at 12 C.F.R. § 366.15, the regulations provide a process for the FDIC

to "determine" if its rules prohibit a party from performing services, whether

corrective action can be taken, or whether a waiver may be granted.  Section H.9.1

of the Task Order solicitation expressly stated that, when they conflict, FDIC

ethics requirements trump the FAR Subpart 9.5 OCI requirements.  JA194-95, ¶28.

In Count I of its Complaint, SRA alleged that award to CSC would

violate FDIC laws and regulations because FDIC's separate OCI requirements had

---

[64] Unlike the CFC's practice in other bid protests where it requested and received a
GAO advisory opinion, the CFC here simply adopted GAO's advisory opinion
without explanation or analysis.  JA3.  In other cases where GAO provided the
CFC a requested advisory opinion, the CFC independently decided the merits of
the protest, usually after detailed review of the Administrative Record and on a
Motion for Judgment on the Administrative Record, *see* RCFC 52.1(c), while
carefully analyzing GAO's advisory opinion.  *E.g.*, *Academy Facilities
Management v. U.S.*, 87 Fed. Cl. 441, 455-56, 459-61, 464, 467, 471 (2009);
*Career Training Concepts v. U.S.*, 83 Fed. Cl. 215, 224-25, 229-30, 232, 236
(2008); *CCL Serv. Corp. v. U.S.*, 48 Fed. Cl. 113, 117, 121-22 (2000).

not been met.  JA196-97, ¶¶32-38.  This allegation stood apart from Count II, a separate but related challenge to the validity of the GSA OCI waiver under FAR Subpart 9.5.  JA197-98, ¶¶40-46.  The allegations of violation of FDIC law and regulation were *not* addressed in GSA's OCI waiver; the D&F supporting the GSA OCI waiver was limited, by its terms, to OCI issues under FAR Subpart 9.5.  JA173-74; JA379 (p. 5, ln.10-25).

During the CFC proceedings, SRA observed that FDIC was in the best position to  understand and apply its own laws and regulations, but had not yet reviewed SRA's allegations. JA251-59.  Further, in the course of its review, the FDIC would create a record where none existed.  Thus, SRA advised the CFC that remand to FDIC was a responsible, authorized step.  JA251-59.  In fact, the CFC previously has remanded a protest to FDIC in order for FDIC to act and provide additional information not in the record but necessary for decision on the merits. *See Cohen Fin. Servs. v. United States*, 110 Fed. Cl. 267, 289 (2013).

The CFC did not remand to FDIC.  Instead, it asked GAO for an advisory opinion as to whether the OCI waiver "violated APA standards and, if so, to adjudicate the merits" of SRA's original GAO protest "as if the Waiver had not been issued."  JA24, *29.  Hence, the CFC never put before the GAO much of the allegations of SRA's Complaint.

    b.  The CFC failed to recognize its concurrent jurisdiction with GAO

GAO's authority to hear and decide bid protests is set forth at 31 U.S.C. §§ 3551 *et seq.*, which expressly contemplates *concurrent* original jurisdiction for both GAO and the CFC:

> This subchapter does not give the Comptroller General exclusive jurisdiction over protests, and nothing contained in this subchapter shall affect the right of any interested party to file a protest with the contracting agency or to file an action in the United States Court of Federal Claims.

31 U.S.C. § 3556.  Thus, a protest brought to GAO does not preclude the party from bringing an identical protest to the CFC.[65]  The CFC failed to recognize its broader overlapping jurisdiction and the limited scope of GAO's advisory opinion. SRA properly availed itself of the CFC's jurisdiction.

 "Being by its very nature an advisory opinion, the GAO decision is not controlling on the parties or on [the CFC]." *Health Sys. Mktg. & Dev. Corp. v. United States*, 26 Cl. Ct. 1322, 1325 (1992)); *see Allied Tech. Group, Inc. v. United States*, 649 F.3d 1320, 1331 (Fed. Cir. 2011) ("GAO [bid protest] opinions

---

[65] *Centech Group*, 78 Fed. Cl. at 507 n.20 (referencing 31 U.S.C. § 3556) (stating that "the right to file a protest in the Court of Federal Claims is unaffected by GAO's protest process"); *see S.K.J. & Assocs. v. United States*, 67 Fed. Cl. 218, 223-24 (2005) ("A disappointed bidder on a government contract has a choice of three forums within which to file a protest: the procuring agency, this court and GAO. GAO may review procurement protests, but such review does not exclude judicial review.") (citations omitted).

are not binding on this court").  At most, GAO's advisory opinion should have served only to inform the CFC's independent adjudication of Counts I and II of SRA's Complaint.  Instead, by giving such deference to the GAO's opinion, the CFC abdicated its independent responsibilities.

        c.       GAO did not apply proper APA review

In reviewing GSA's OCI waiver determination, GAO did not exercise true APA review as the CFC or this Court would under the Tucker Act.  *See Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009) (mandating APA review of Contracting Officer's OCI determinations).  While GAO has described its review as one that "mirrors" this Court's review,[66] that proposition has dubious validity and did not occur in the GAO's advisory opinion here.

In a CFC bid protest, the Tucker Act directs the court to review agency action pursuant to APA standards.  *See* 28 U.S.C. § 1491(b)(4); *Axiom*, 564 F.3d at 1381 (referencing 5 U.S.C. § 706(2)(A)).  The APA, in turn, directs that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions" determined to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *Impresa Construzioni*, 238 F.3d at 1332.  In making these determinations, "the court shall

---

[66] *McTech Corp.*, B-406100 et al., 2012 CPD ¶97 at *12.

review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." *Id.*

Against these standards, GAO did not apply "true" APA review because, *inter alia*, it failed to consider whether the GSA OCI waiver was in accordance with FDIC law and regulations. *See* 5 U.S.C. § 706(2)(A). The CFC instructed GAO to consider whether the GSA OCI waiver "violated APA standards," which include a determination as to whether GSA action was otherwise in accordance with law. JA24, *29. Under the facts here, the relevant law includes both the FAR and separate FDIC laws and regulation. GAO limited its review to whether GSA's OCI waiver was executed in accordance with FAR Subpart 9.5. GAO also fell short because it did not consider the entire record before GSA and FDIC.[67] GAO limited its review of OCI waivers to facial compliance with FAR rules.[68] To determine whether the GSA OCI waiver passes muster under applicable FDIC laws, GAO needed access to, but did not have, the full record before GSA.[69] Thus, GAO's perfunctory conclusions as to the validity of the OCI

---

[67] *See* 5 U.S.C. § 706; *Axiom*, 564 F.3d at 1379-80 (explaining APA review requires consideration of the record that was before the agency).

[68] GAO limits its review to procedures, asking whether an official with authority has made a written determination. *AT&T Gov't Solutions, Inc.*, B-407720 et al., 2013 CPD ¶45 at *5-6; *CIGNA Gov't Servs., LLC*, B-401068.4, et al, 2010 CPD ¶230 at 12.

[69] GAO had before it the D&F accompanying GSA's OCI Waiver. JA173-85. GAO did not have access to SRA's CFC Complaint or pleadings and therefore

waiver (Counts I and II) were not the result of proper APA review and were owed no deference.

### 2. The CFC Failed to Adjudicate the Remaining Three Properly Pled Counts of SRA's Complaint

SRA raised three additional counts, each wholly independent from the propriety of the OCI waiver. The CFC, however, did not adjudicate Counts III and IV, which allege independent violations of FDIC law and regulation. JA199-201. Nor did it adjudicate Count VI,[70] which alleges a violation of law for GSA to proceed with an illegal contract where a legal alternative was available. JA201.

The CFC's apparent reason for dismissing SRA's Complaint without reaching these other counts is that these claims are "mooted" by GAO's timeliness determination. JA3. But there is no explanation why separate challenges to false OCI certifications and arbitrary, capricious and illegal Agency conduct in the face of such false certifications are moot, even if SRA's original OCI protest filed at GAO was untimely.

---

could not have known of alleged violations of FDIC law and regulation. Nor did the GAO have any record from the FDIC explaining how the FDIC could justify, excuse or ignore violations of its own laws.

[70] SRA did not include a Count V in its Complaint. Count VII sought a TRO and injunctive relief based upon the other Counts and in consideration of the factors relevant to injunctive relief. JA202.

## C.    The CFC Erred By Failing To Adjudicate SRA's Claims

In this appeal, SRA does not argue the merits of the OCI waiver or the alleged violations of CICA or FDIC laws and regulations.  Instead, SRA brings to this Court's attention the fact that the CFC did not adjudicate matters properly pled and within its jurisdiction.  The CFC's adoption of GAO's advisory opinion, only tangentially related to Counts I and II of SRA's Complaint, did not satisfy the CFC's duty to adjudicate SRA's challenge to the validity of the OCI waiver.  The CFC further abdicated its responsibility to adjudicate properly pled matters when it concluded erroneously that GAO's advisory opinion mooted Counts III, IV, and VI of SRA's Complaint when these Counts had not been considered by the GAO or addressed by the CFC.  In sum, the CFC erred by its failure to adjudicate.

## IV.    SRA HAS DEMONSTRATED ENTITLEMENT TO A STAY TO AVOID PREJUDICIAL AND IRREPARABLE HARM PENDING REMAND TO THE CFC

By way of its arguments above and in its CFC Complaint, SRA has established the merits of this case.  If this Court agrees that SRA has a substantial likelihood of demonstrating that the CFC had jurisdiction, but failed to exercise it, then this Court should issue a stay pending this Court's resolution and remand.   The stay should postpone the transition of ISC-3 responsibilities to CSC and prevent the potentially unlawful expenditure of funds for ISC-3 services from CSC.  SRA can continue as the in-place incumbent until such time as the CFC

assumes authority over the action and makes its own decision on injunctive relief. The public interest will be served by avoiding expenditures on a potentially illegal contract.  JA389; JA405-06; JA461.

## CONCLUSION AND RELIEF SOUGHT

For the above reasons, SRA respectfully requests that this Court vacate the CFC's judgment and remand the case for further proceedings, including development of a complete administrative record, to include information regarding the FDIC's actions when informed of alleged violations of its laws and regulations, and GSA's consideration of FDIC laws and regulations, and for full adjudication of the merits of SRA's Complaint.  SRA further requests a stay, as discussed above.

Dated:  March 20, 2014                     Respectfully submitted,

By:        /s/ Robert S. Metzger

Michael J. Schaengold                      Robert S. Metzger
Patton Boggs LLP                           Jeffery M. Chiow
2550 M Street, NW                          Oliya S. Zamaray
Washington, DC 20037                       Rogers Joseph O'Donnell
Tel: (202) 457-6523                        750 9th Street, NW, Suite 710
Fax: (202) 457-6315                        Washington, DC 20001
Email: mschaengold@pattonboggs.com         Tel: (202) 777-8951
                                           Fax: (202) 347-8429
*Attorney for Plaintiff-Appellant*         Email: rmetzger@rjo.com

                                           *Attorneys for Plaintiff-Appellant*

| | TABLE OF CONTENTS ADDENDUM | | |
|---|---|---|---|
| **No.** | **Document** | **Description** | **Bates No.** |
| 1. | *SRA International, Inc. v. United States*, No. 13-969 C, slip op. (COFC Feb. 3, 2014). | February 3, 2014. COFC final judgment granting defendant's motion to dismiss. | JA1 |
| 2. | *SRA International, Inc. v. United States*, No. 13-969 C, slip op. (COFC Feb. 3, 2014). | February 3, 2014. COFC final decision ordering dismissal. | JA2 – JA7 |
| 3. | *SRA International, Inc. v. United States*, No. 13-969 C, slip op. (COFC Jan. 26, 2014). | January 26, 2014. COFC temporary restraining order. | JA8 – JA15 |
| 4. | *SRA International, Inc. v. United States*, 2014 U.S. Claims LEXIS 16 (Fed. Cl. Jan. 13, 2014). | January 13, 2014. COFC decision on jurisdiction. | JA16 – JA25 |

# In the United States Court of Federal Claims

### No. 13-969 C

**SRA INTERNATIONAL, INC.**
     **Plaintiff**


    **v.**                                      **JUDGMENT**

**THE UNITED STATES**
     **Defendant**

   **and**

**COMPUTER SCIENCES CORPORATION**
     **Defendant-Intervenor**


Pursuant to the court's Final Order, filed January 26, 2014, granting defendant's February 3, 2014, motion to dismiss,

IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that judgment is entered in favor of defendant.


                              Hazel C. Keahey
                              Clerk of Court

**February 3, 2014**         By:    s/ Debra L. Samler

                              Deputy Clerk


NOTE: As to appeal, 60 days from this date, see RCFC 58.1, re number of copies and listing of all plaintiffs.  Filing fee is $505.00.

# In the United States Court of Federal Claims

No. 13-969 C

Filed: January 26, 2014

```
****************************************
                                       *
                                       *
SRA INTERNATIONAL, INC.,               *
                                       *
        Plaintiff,                     *
                                       *
v.                                     *
                                       *
THE UNITED STATES,                     *
                                       *
        Defendant,                     *
                                       *
and                                    *
                                       *
COMPUTER SCIENCES CORPORATION,         *
                                       *
        Defendant-Intervenor.          *
                                       *
                                       *
****************************************
```

## FINAL ORDER

On January 13, 2014 the court issued an Opinion denying the Government's Motion To Dismiss, concluding that "the [General Services Administration's November 25, 2013 Determination and Findings for Waiver of Organizational Conflict of Interest Rules (hereinafter the "Waiver")] in this case was not made 'in connection with' the issuance of the Task Order, but was an independent discretionary agency action and therefore, 41 U.S.C. § 4106(f)(1) does not bar the court from adjudicating whether the Waiver otherwise violated APA standards." *SRA Int'l, Inc. v. United States*, No.13-969, 2014 WL 171012, *8 (Fed. Cl. Jan. 13, 2014). The court's January 13, 2014 Opinion requested, in light of the exigent circumstances presented by this case, that the United States Government Accountability Office ("GAO") issue an advisory opinion as to whether the Waiver violated Administrative Procedure Act standards and, if so, to adjudicate the merits of the August 26, 2013 protest no later than close of business, January 23, 2014, *i.e.*, as if the Waiver had not issued. *Id.*; *see also* 4 C.F.R. § 21.11 (The "GAO may, at the request of a court, issue an advisory opinion on a bid protest issue that is before the court.").

On January 31, 2014, the GAO responded and determined that the Waiver decision was not arbitrary or capricious. In addition, the GAO advised that, had the Waiver not been issued,

the GAO would have found SRA's unequal access to information allegations to be untimely. The GAO response is attached as Exhibit A.

On February 3, 2014, in a telephone conference with the parties, the Government requested that the court grant a motion to dismiss. In light of the GAO's January 31, 2014 response, the court grants the Government's February 3, 2014 Motion To Dismiss, as SRA's remaining claims are moot.

The Clerk of the Court is ordered to enter judgment in favor of the Government. In addition, the January 26, 2014 Temporary Restraining Order is dissolved.


**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**

'''Gzj kdk'C

# GAO    U.S. GOVERNMENT ACCOUNTABILITY OFFICE

**441 G St. N.W.**
**Washington, DC 20548**

B-407709.5; B-407709.6

January 31, 2014

The Honorable Susan G. Braden
Judge, U.S. Court of Federal Claims

Subject: SRA International, Inc. v. United States, No. 13-969 C

Dear Judge Braden:

This is in response to your request for an advisory opinion with regard to SRA International, Inc. v. United States, No. 13-969 C, Jan. 13, 2014. Specifically, the Court asked our Office whether the organizational conflict of interest (OCI) waiver issued by the contracting agency associated with the ISC3 task order violated Administrative Procedure Act (APA) standards and, if so, to adjudicate the merits of the August 26, 2013, protest (i.e., as if the waiver had not been issued). As detailed below, we do not find the agency's waiver decision to be arbitrary or capricious. In addition, had a waiver not been issued, we would have found SRA's OCI allegation untimely and not addressed the merits of the OCI allegation.

By way of background, SRA's August 26, 2013, bid protest to our Office alleged, among other things, that Computer Sciences Corporation (CSC) had an OCI that the contracting agency had failed to identify or mitigate due to CSC's proposal of Blue Canopy Group, LLC, as a subcontractor.[1] SRA Int'l, Inc., B-407709.5, B-407709.6, Dec. 3, 2013, 2013 CPD ¶ 281 at 5. On November 25, 2013, prior to our resolution of the protest, the General Services Administration (GSA) advised our Office and the protest parties that the agency had waived any OCIs regarding the task order issued to CSC, and provided our Office a copy of the issued waiver. Id. at 5-6. In light thereof, we found SRA's unequal access to information OCI allegation to be academic and dismissed that aspect of SRA's protest. Id. at 6. SRA did not then file a protest with our Office regarding the agency's decision to waive the OCI, and our decision "reache[d] no

---

[1] According to the protester, Blue Canopy had been performing as the Federal Deposit Insurance Corporation (FDIC) network security services contractor since at least 2009, and in this role monitored and audited network security on the FDIC's network. SRA stated that its performance of the ISC2 task order contract was subject to security monitoring by Blue Canopy, and alleged that this gave CSC unequal access to SRA's information and, consequently, an unfair competitive advantage in developing its proposal.

conclusion on the waiver." Id. Subsequent to the issuance of our decision, SRA filed its current post-award bid protest with the Court on December 9, 2013, challenging GSA's OCI waiver decision.

In response to your question regarding the propriety of the waiver, we note initially that the responsibility for determining whether an OCI exists rests with the procuring agency. Federal Acquisition Regulation (FAR) §§ 9.504, 9.505; CIGNA Gov't Servs., LLC, B-401068.4, B-401068.5, Sept. 9, 2010, 2010 CPD ¶ 230 at 12. In reviewing bid protests that challenge an agency's conflicts determinations, the Court of Appeals for the Federal Circuit has mandated application of the "arbitrary and capricious" standard established pursuant to the APA. See PAI Corp. v. United States, 614 F.3d 1347, 1351-52 (Fed. Cir. 2010). The standard of review employed by this Office in reviewing a contracting officer's OCI determination mirrors the standard required by the Federal Circuit. See, e.g., The Analysis Group, LLC, B-401726.3, Apr. 18, 2011, 2011 CPD ¶ 166 at 4; CIGNA Gov't Servs., LLC, supra.

The FAR also establishes that, as an alternative to avoiding, neutralizing, or mitigating an OCI, an agency head or designee, not below the level of the head of the contracting activity, may execute a waiver. FAR § 9.503. Because the waiver of an OCI is a discretionary agency action, our review is confined to whether the waiver outlined the extent of the conflict, and whether it was executed by a duly-authorized individual. The Analysis Group, LLC, supra, at 7; CIGNA Gov't Servs., LLC, supra, at 14.

Here, the record reflects that the contracting officer prepared and submitted a written waiver request to the appropriate official that outlined all of the facts and circumstances that the protester believed indicated the existence of an OCI and the extent of the conflict; provided a detailed discussion of the bases for his conclusion that any possible conflict was exceedingly remote and unsubstantiated; and concluded that, under the totality of the circumstances, a waiver would be in the best interests of the government. The requested waiver was then duly executed by the agency's senior procurement executive, as authorized by FAR § 9.503. Accordingly, we do not find GSA's waiver decision to be arbitrary or capricious. See Turner Constr. Co. v. United States, 94 Fed. Cl. 561, 584-85 (2010), aff'd, 645 F.3d 1377 (Fed. Cir. 2011).

As a final matter, we note that had the agency not executed a waiver of the OCI (and thus we had not dismissed this aspect of SRA's protest as academic), we would have found the issue untimely and not considered the merits of SRA's unequal access to information OCI allegation. The record before our Office showed that SRA was aware of the basis for its unequal access to information OCI allegation regarding Blue Canopy by November 1, 2012 (during the course of its earlier protest challenging the task order issued to CSC), approximately 10 months before the argument was first raised in its protest to our Office. Moreover, the type of OCI being alleged here continued to exist notwithstanding the agency's intervening decision to take corrective action (SRA knew that CSC was still eligible to compete and would likely do so as the original awardee). Since our Bid Protest Regulations require that a protester raise an allegation within 10 days of when the protester knew or should have known of its protest basis, we would

have dismissed SRA's OCI allegation as untimely. 4 C.F.R. § 21.2(a)(2) (2013); <u>see also</u> <u>Honeywell Tech. Solutions, Inc.</u>, B-400771, B-400771.2, Jan. 27, 2009, 2009 CPD ¶ 49 at 6-7 (finding protest to be untimely where contractor knew about the alleged OCI prior to the solicitation's closing, but did not raise the issue before the closing date); <u>CRAssociates, Inc. v. United States</u>, 102 Fed. Cl. 698, 711-12 (2011) (Court of Federal Claims finds OCI allegation untimely in circumstances similar to those here, citing <u>Blue and Gold Fleet, L.P. v. United States</u>, 492 F.2d 1308, 1313 (Fed. Cir. 2007)).

I hope you find this response on the OCI waiver helpful.

Sincerely yours,

Susan A. Poling
General Counsel

B-407709.5, B-407709.6

JA7

# In the United States Court of Federal Claims

No. 13-969 C
Filed under seal: January 26, 2014[*]
Public Version Issued: January 27, 2014

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| | * |
| | * |
| | * |
| SRA INTERNATIONAL, INC., | * |
| | * |
|     Plaintiff, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
|     Defendant, | * |
| | * |
| and | * |
| | * |
| COMPUTER SCIENCES CORPORATION, | * |
| | * |
|     Defendant-Intervenor. | * |
| | * |
| | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Robert S. Metzger**, Rogers Joseph O'Donnell PC, Washington, D.C., Counsel for the Plaintiff.

**Christopher James Carney**, United States Department of Justice, Trial Attorney, Commercial Litigation Branch, Washington, D.C., Counsel for the Government.

**Carl Jerald Peckinpaugh**, Computer Sciences Corporation, Falls Church, VA, Counsel for Defendant-Intervenor.

---

[*] On January 26, 2014, the court forwarded a sealed copy of this Opinion and Order to the parties. During a status conference held on January 27, 2014, the parties represented that no redactions of confidential and/or privileged information were required.

**OPINION AND ORDER**

BRADEN, *Judge*.

## I.    RELEVANT FACTUAL BACKGROUND.[1]

To date, SRA International, Inc. ("SRA" or "Plaintiff") has provided network infrastructure support to the Federal Deposit Insurance Corporation ("FDIC"), pursuant to a September 2009 FDIC Infrastructure Support Contract ("ISC-2 Contract").[2]  Compl. ¶ 11; Pl. Mem. Ex. A at A0003.  The ISC-2 Contract was a task order, issued under the General Services Administration's ("GSA") Millenia Government-Wide Acquisition Contract ("Millenia GWAC").  Pl. Mem. Ex. A at A0008; Pl. Mem. Ex. G ¶ 1 (Contracting Officer's September 25, 2012 Statement of Facts in the United States Government Accountability Office Protest of SRA International, Inc., B-407709.5 (hereinafter the "CO's Statement")).

On June 21, 2012, the GSA Federal Systems Integration and Management Center ("FEDSIM") issued Task Order Request #GSC-QF0B-12-0020, on behalf of the FDIC, pursuant to the Alliant GWAC (that superseded the Millenia GWAC).  Pl. Mem. Ex. G ¶ 1 (CO's Statement).  On October 22, 2012, the GSA awarded Task Order #GST0013AJ0013 to Computer Sciences Corporation ("CSC").   After SRA filed a protest at the United States Government Accountability Office ("GAO"), GSA terminated the October 22, 2012 Task Order for convenience on December 13, 2012.  Pl. Ex. G ¶ 2.

After a series of corrective amendments,[3] on August 14, 2013, the GSA awarded Task Order #GST0013AJ0084 ("ISC-3 Contract" or "Task Order") to CSC for a price of $365,462,364, including all options.   Pl. Mem. Ex. G ¶ 24.   During an August 21, 2013 debriefing with SRA, the GSA confirmed that Blue Canopy Group, LLC ("Blue Canopy") was going to be a subcontractor for CSC on the ISC-3 Contract.  Compl. ¶ 13.  During the last five years, however, Blue Canopy worked under a FDIC contract to conduct security audits of SRA's network security, providing Blue Canopy with "access to SRA's proprietary information" and knowledge of "how the FDIC evaluated SRA's work."  Compl. ¶ 15.

---

[1]  The relevant facts discussed herein were derived from: the December 9, 2013 Complaint and exhibits attached to a December 9, 2013 Memorandum of Points And Authorities In Support Of Plaintiff's Application For A Temporary Restraining Order and Preliminary Injunction ("Pl. Mem. Exs. A–O").

[2]  The Complaint refers to the September 2009 FDIC Infrastructure Support Contract with SRA as the "ISC-2 Contract."  Compl. ¶ 11.

[3]  The CO's Statement describes these corrective amendments.  Pl. Mem. Ex. G ¶¶ 3–7; *see also id.* ¶ 2 ("As part of its corrective action in response to the [October 22, 2012 SRA's GAO] protest, the [GSA] worked with FDIC to define the parameters of the re-procurement.").

Accordingly, on August 26, 2013, SRA filed a second protest with the GAO, citing two organizational conflicts of interest ("OCI") resulting from Blue Canopy's FDIC work: (1) impaired objectivity; and (2) unequal access to information. Compl. ¶ 14.[4]

On September 25, 2013, the GSA informed the GAO that Blue Canopy would not work on the ISC-3 Contract. Compl. ¶ 20; Pl. Mem. Ex. F at A0110. SRA agreed that this resolved the impaired objectivity OCI, but not the unequal access to information conflict. Compl. ¶ 23.

In addition, SRA insisted that GAO proceed with the protest, because Section H.9.1 of the Task Order Request also requires compliance with the FDIC ethics regulations, set forth in 12 C.F.R. § 366.1.[5] Compl. ¶ 28 (citing Section H.9.1 of the Task Order Request). And, Section K of the Task Order Request further advises contractors that the failure to certify compliance with 12 C.F.R. § 366.1 "shall result in the offeror being found non-responsible for award of this task order." Compl. ¶ 29 (quoting Task Order Request, 12 C.F.R. § 366.1).

On November 25, 2013, the GSA issued a Determination and Findings for Waiver of Organizational Conflict of Interest Rules (hereinafter the "Waiver"). Pl. Mem. Ex. A at A0002. The Waiver stated that "FEDSIM believes that the application of the conflicts rules set forth in FAR subpart 9.5 to this [Task Order] is not in the Government's interest and that the waiver in accordance with . . . FAR 9.503[6] is appropriate." Pl. Mem. Ex. A at A0002. Consequently, on December 3, 2013, the GAO dismissed SRA's protest as "academic." Compl. ¶ 4.

## II.  PROCEDURAL HISTORY.

On December 9, 2013, SRA filed a post-award bid protest Complaint in the United States Court of Federal Claims. Count I seeks a declaration, under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), that the Waiver violated the FDIC's rules for ethics and conduct, set forth at 12 U.S.C. § 1819(a)[7] (Tenth) and 12 U.S.C. § 1822(f).[8] Compl. ¶¶ 32, 38. Count II

---

[4] FAR subpart 9.5 "[p]rescribes responsibilities, general rules, and procedures for identifying, evaluating, and resolving organizational conflicts of interest." 48 C.F.R. § 9.500(a).

[5] "[P]art [366] establishes the minimum standards of integrity and fitness that contractors . . . must meet if they perform any service or function on [FDIC's] behalf." 12 C.F.R. § 366.1.

[6] FAR Section 9.503 provides that an agency "may" waive rules or procedures concerning organizational conflicts of interest (subpart 9.5), "by determining that its application in a particular situation would not be in the Government's interest." 48 C.F.R. § 9.503.

[7] The FDIC's regulatory authority includes the power

[t]o prescribe by its Board of Directors such rules and regulations as it may deem necessary to carry out the provisions of [Chapter 16 of the United States Code] or of any other law which it has the responsibility of administering or enforcing

3

seeks a declaration that the Waiver violated FAR 9.503. Compl. ¶ 46. Counts III and IV allege that CSC and Blue Canopy also submitted false and materially misleading certifications, in violation of 12 C.F.R. § 366.1, requiring issuance of a permanent injunction. Compl. ¶¶ 51, 54, 57, 61. The December 9, 2013 Complaint does not include a Count V. Count VI, however, seeks a declaration that the FDIC cannot make "an illegal award to an invalid offeror." Compl. ¶ 65. Count VII seeks a temporary restraining order. Compl. ¶¶ 68–70.

On December 9, 2013, SRA also filed: a Motion For Temporary Restraining Order; a Motion For Preliminary Injunction; and a Motion For A Protective Order. SRA also filed a Memorandum of Points And Authorities In Support Of Plaintiff's Application For A Temporary Restraining Order and Preliminary Injunction ("Pl. Mem").

On December 11, 2013, the court convened a telephone conference to discuss jurisdictional issues raised in the December 9, 2013 Complaint and ordered the parties to brief the issue of the court's jurisdiction. On that same day, CSC filed a Motion To Intervene.

On December 16, 2013, the Government filed a Motion to Dismiss, arguing that Section 4106(f) of the Federal Acquisition Streamlining Act of 1994 ("FASA")[9] precluded the court from adjudicating the claims in SRA's December 9, 2013 Complaint.[10] Gov't Br. 1–2. On

---

(except to the extent that authority to issue such rules and regulations has been expressly and exclusively granted to any other regulatory agency).

12 U.S.C. § 1819(a).

[8] Congress requires that the FDIC through its Board of Directors to prescribe

regulations applicable to those independent contractors . . . governing conflicts of interest, ethical responsibilities, and the use of confidential information . . . . Any such regulations shall be in addition to, and not in lieu of, any other statute or regulation which may apply to the conduct of such independent contractors.

12 U.S.C. § 1822(f)(3).

[9] Pub. L. No. 103-355, § 1004, 108 Stat. 3243, 3252–53 (codified at 10 U.S.C. § 2304c(e) and 41 U.S.C. § 4106(f)).

[10] Section 4106 of the FASA provides:

(a) Application.—This section applies to task and delivery order contracts entered into under sections 4103 and 4105 of this title.

. . .

(f) Protests.—

(1) Protest not authorized.—A protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order except for—

4

December 20, 2013, SRA filed a Response. On December 23, 2013, the Government filed a Reply, with leave of the court.

On January 13, 2014 the court issued an Opinion denying the Government's Motion To Dismiss, concluding that "the Waiver in this case was not made 'in connection with' the issuance of the Task Order, but was an independent discretionary agency action and therefore, 41 U.S.C. § 4106(f)(1) does not bar the court from adjudicating whether the Waiver otherwise violated APA standards." *SRA Int'l, Inc. v. United States*, No.13-969, 2014 WL 171012, *8 (Fed. Cl. Jan. 13, 2014). The court's January 13, 2014 Opinion requested, in light of the exigent circumstances presented by this case, that GAO issue an advisory opinion as to whether the Waiver violated APA standards and, if so, to adjudicate the merits of the August 26, 2013 protest no later than close of business, January 23, 2014, *i.e.*, as if the Waiver had not issued. *Id.*; *see also* 4 C.F.R. § 21.11 (The "GAO may, at the request of a court, issue an advisory opinion on a bid protest issue that is before the court.").

In a conference call, also on January 13, 2014, the Government represented that a temporary restraining order would be unnecessary pending the GAO's advisory opinion, because CSC would not begin working on the ISC-3 Contract, nor would CSC recruit incumbent SRA personnel, during that time.

On January 23, 2014, the GAO informed the court that the GAO could not meet the January 23, 2014 deadline, but expected to provide the advisory opinion by January 31, 2014. Accordingly, on January 23, 2014, the court issued an Order staying all further briefing in this case until February 3, 2014.

On January 24, 2014, the court received an email from Plaintiff's counsel, Robert S. Metzger, explaining that, in contravention of the Government's representations during the January 13, 2014 status conference, several SRA staff members, presently working at the FDIC on the ISC-2 Contract, had been contacted by CSC for recruitment purposes.

---

(A) a protest on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued; or

(B) a protest of an order valued in excess of $10,000,000.

(2) Jurisdiction over protests.—Notwithstanding section 3556 of title 31, the Comptroller General shall have exclusive jurisdiction of a protest authorized under paragraph (1)(B).

(3) Effective period.—Paragraph (1)(B) and paragraph (2) of this subsection shall not be in effect after September 30, 2016.

41 U.S.C. § 4106. Because SRA's December 9, 2013 Complaint purportedly was a protest "in connection with the issuance or proposed issuance of a task or delivery order," the Government argued that the United States Court of Federal Claims did not have jurisdiction pursuant to the FASA task order bar. Gov't Br. 1–2.

Given the immediacy and irreparable nature of the harm posed to SRA by CSC's actions, the court provided all parties with notice of its intention to issue a Temporary Restraining Order ("TRO") via email on January 26, 2014.

## III.    DISCUSSION.

RCFC 65 authorizes the United States Court of Federal Claims to issue injunctive relief, including a TRO. *See* RCFC 65(b) (allowing the court to issue a TRO with or without notice). The court weighs four factors in deciding whether to issue a TRO: "(1) a reasonable likelihood of success on the merits; (2) irreparable harm if an injunction is not granted; (3) a balance of hardships tipping in [Plaintiff's] favor; and (4) the injunction's favorable impact on the public interest." *Sciele Pharma, Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1259 (Fed. Cir. 2012) (quoting *Amazon, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1243, 1350 (Fed. Cir. 2001)); *see also CC Distribs., Inc. v. United States*, 65 Fed. Cl. 813, 815 (2005). "No one factor, taken individually, is necessarily dispositive . . . . [T]he weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993). Notwithstanding, the party seeking injunctive relief must establish both a likelihood of success and irreparable harm in order for the court to grant a preliminary injunction. *Amazon, Inc.*, 239 F.3d at 1350. Further, in "the context of bid protests, the Tucker Act [requires this court], in conducting its balancing, to 'give due regard to the interests of national defense and national security and the need for expeditious resolution of the action.'" *Serco, Inc. v. United States*, 101 Fed. Cl. 717, 721 (2011) (quoting 28 U.S.C. § 1491(b)(3)).

As to the first factor, SRA has established "a reasonable likelihood of success on the merits." *Sciele Pharma, Inc.*, 684 F.3d at 1259. At a minimum, SRA has alleged sufficient "hard facts" to suggest the existence of an unequal access to information OCI, that provided SRA with "a significant competitive advantage in obtaining" the ISC-3 procurement. *NetStar-I Gov't Consulting, Inc. v. United States*, 98 Fed. Cl. 729, 732 (2011). SRA also has alleged that the Waiver violated the FDIC's rules for ethics and conduct, violated FAR 9.503, and that CSC and Blue Canopy submitted false and materially misleading certifications, in violation of 12 C.F.R. § 366.1. Compl. ¶¶ 32–61. At this preliminary stage, particularly when other factors favor the issuance of injunctive relief, "it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation." *Standard Havens Prods., Inc. v. Gencor Indus.*, 897 F.2d 511, 513 (Fed. Cir. 1990) (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953)); *see also Serco, Inc.*, 101 Fed. Cl. at 721 ("[A] weak showing of likelihood of success on the merits could be cured by a strong showing that the balance of the equities favors plaintiff, or vice versa.").

As to the second factor, SRA has shown that irreparable harm will result if a TRO is not issued. In making this determination, the "relevant inquiry . . . is whether plaintiff has an adequate remedy in the absence of an injunction." *NetStar-I*, 98 Fed. Cl. at 734–35 (quoting *Magellan Corp. v. United States*, 27 Fed. Cl. 446, 447 (1993). In this case, SRA has alleged that: it was denied a fair opportunity to compete in the ISC-3 procurement, because the Waiver precluded the GAO from reviewing the merits of SRA's bid protest; is suffering a substantial loss of financial benefit, stemming from an unlawful procurement process; and that several SRA staff members, presently working at the FDIC, have been contacted by CSC for recruitment

purposes. Pl. Mem. 36–37. It is well established that "denial of a fair opportunity to compete and loss of financial benefit from a lawful procurement process constitute irreparable harm." *BCPeabody Constr. Servs. v. United States*, 112 Fed. Cl. 502, 514 (2013); *Overstreet Elec. Co., Inc. v. United States*, 47 Fed. Cl. 728, 744 (2000) ("[A] lost opportunity to compete in a fair competitive bidding process for a contract has been found sufficient to prove irreparable harm.") (citing *United Int'l Investigative Servs., Inc. v. United States*, 41 Fed. Cl. 312, 323 (1998) ("[T]he opportunity to compete for a contract and secure any resulting profit has been recognized to constitute significant harm.")); *see also Magnavox Elec. Sys. Co. v. United States,* 26 Cl. Ct. 1373, 1379 (1992) (same). In addition, the loss of employees, which can be prevented by injunctive relief, constitutes irreparable harm. *See NetStar-I*, 98 Fed. Cl. at 734–35 (concluding that an awardees' offer of employment to protestor's program manager constituted irreparable harm).

As to the third factor, the balance of hardships tips in SRA's favor. The Government has argued that SRA, as the incumbent contractor, is no longer adequate to meet the FDIC's needs and that, because the bidding process has already undergone corrective action, further delay in awarding the task order will harm the agency. Status Conference (Jan. 9, 2014). This delay, however, stems from the GSA's conscious choice to issue an allegedly unlawful Waiver, instead of allowing the GAO to reach the merits of SRA's protest. Any delay is therefore of the Government's own making. *See Cohen Fin. Servs. v. United States*, 110 Fed. Cl. 267, 289 (2013) (explaining that hardships "wholly attributable" to the Government's "unexplained failure [to follow its regulations]" do not preclude issuance of injunctive relief). By contrast, as explained above, SRA will suffer irreparable harm in the absence of injunctive relief.

As to the fourth factor, the public interest in a fair competition outweighs any public interest in an agency's need to obtain the procured services. *See PGBA, LLC v. United States*, 57 Fed. Cl. 655, 663 (2003) ("Clearly the public interest in honest, open, and fair competition in the procurement process is compromised whenever an agency abuses its discretion in evaluating a contractor's bid."). FDIC can continue to obtain services from SRA, the incumbent contractor, pending resolution of this protest.

Pursuant to RCFC 65(c), the "court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." RCFC 65(c); *see also Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1385 (Fed. Cir. 2006) ("The amount of a bond is a determination that rests within the sound discretion of a trial court."). Because nothing in the record suggests the FDIC will suffer any actual monetary harm, and the FDIC can continue to rely on SRA, as the incumbent contractor, to continue to meet its requirements, no security is necessary. *See, e.g., EOD Tech., Inc. v. United States*, 82 Fed. Cl. 12, 23 (2008) (finding no security was necessary where a bridge contract existed and would continue to be performed during litigation).

IV.    CONCLUSION.

       In accordance with Rule 65 of the Rules of the United States Court of Federal Claims, Computer Sciences Corporation,[11] their officers, agents, servants, employees, representatives, and all persons acting in concert and participating with them respecting the ISC-3 procurement are hereby **temporarily restrained and enjoined** from contacting or recruiting any SRA personnel currently performing work for the FDIC under the ISC-2 Contract until **February 4, 2014.** The court will convene a status conference with the parties as soon as feasible to discuss the issuance of this TRO.

       **IT IS SO ORDERED.**

                         s/ Susan G. Braden

                         **SUSAN G. BRADEN**

                         **Judge**

---

[11] Pursuant to RCFC 24(a)(2), the court grants CSC's December 11, 2013 Motion To Intervene.



1 of 1 DOCUMENT

**SRA INTERNATIONAL, INC., Plaintiff, v. THE UNITED STATES, Defendant.**

**No. 13-969 C**

**UNITED STATES COURT OF FEDERAL CLAIMS**

*2014 U.S. Claims LEXIS 16*

**January 13, 2014\*, Filed**

    \*   On January 13, 2014, the court forwarded a sealed copy of this Memorandum Opinion and Order to the parties to delete from the public version any confidential and/or privileged information. No redactions were requested.

**SUBSEQUENT HISTORY:**  **[\*1]**
   Reissued for publication: January 14, 2014.

**CASE SUMMARY:**

**OVERVIEW:** HOLDINGS: [1]-In a bid protest, the agency's waiver of organizational conflict of interest rules was not made "in connection with" the issuance of a task order, but was an independent discretionary agency action and therefore *41 U.S.C.S. § 4106(f)(1)* did not bar the court from adjudicating whether the waiver otherwise violated APA standards.

**OUTCOME:** Request to GAO to issue an advisory opinion as to whether the waiver violated APA standards and, if so, to adjudicate the merits of the protest.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview*
*Governments > Courts > Courts of Claims*
[HN1] As a matter of law, the court must consider jurisdiction before reaching the substantive merits of a case. Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte. *U.S. Ct. Fed. Cl. R. 12(b)(1)* and *12(h)(3)*. When deciding a subject-matter jurisdiction challenge, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor.

*Governments > Courts > Courts of Claims*
*Public Contracts Law > Dispute Resolution > Bid Protests*
*Public Contracts Law > Dispute Resolution > Jurisdiction*
[HN2] The Tucker Act authorized the United States Court of Federal Claims to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. *28 U.S.C.S. § 1491(b)(1)*.

*Public Contracts Law > Dispute Resolution > Bid Protests*
*Public Contracts Law > Dispute Resolution > Jurisdiction*
[HN3] The Federal Acquisition Streamlining Act of 1994 (FASA) precludes the United States Court of Federal Claims from adjudicating bid protests in connection with the issuance or proposed issuance of a task or delivery order, unless the protest is on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued. *41 U.S.C.S. § 4106(f)*. As to protests in connection with the issuance or proposed issuance of a task or delivery order valued in excess of $10,000,000, the FASA vests the Comptroller General of the Government Accountability Office (GAO) with exclusive jurisdiction. *41 U.S.C.S. § 4106(f)*.

*Public Contracts Law > Dispute Resolution > Bid Protests*
*Public Contracts Law > Dispute Resolution > Jurisdiction*

[HN4] See *41 U.S.C.S. § 4106.*

*Public Contracts Law > Dispute Resolution > Bid Protests*
*Public Contracts Law > Dispute Resolution > Jurisdiction*

[HN5] The United States Court of Appeals for the Federal Circuit has interpreted the phrase "in connection with," as used in *28 U.S.C.S. § 1491(b)(1),* broadly. The Federal Circuit also has held that, under the in pari materia canon, courts should interpret statutes with similar language that generally address the same subject matter together, as if they were one law. To be sure, the subject matter of *§ 1491(b)(1)* and *41 U.S.C.S. § 4106(f)* concern the bid protest jurisdiction of the United States Court of Federal Claims. However, the appellate court's "sweeping" characterization of the scope of *§ 1491(b)(1)* is dicta. Instead, a careful analysis of the connectedness of each challenged procurement decision to the issuance or proposed issuance of a task order is required.

*Public Contracts Law > Dispute Resolution > Bid Protests*
*Public Contracts Law > Dispute Resolution > Jurisdiction*

[HN6] The United States Court of Federal Claims has exercised jurisdiction to adjudicate the lawfulness of a variety of actions related to a task order. In addition, the court has determined that discrete, preliminary matters that may not necessarily lead to the proposed issuance of a task order, are not subject to the bar at *41 U.S.C.S. § 4106.*

*Public Contracts Law > Dispute Resolution > Bid Protests*
*Public Contracts Law > Dispute Resolution > Jurisdiction*

[HN7] With respect to *41 U.S.C.S. § 4106(f),* a challenge to an agency decision not tied to any single solicitation or delivery order avoids the bar, even though the decision was accomplished through a modification to a task order.

*Public Contracts Law > Dispute Resolution > Bid Protests*

*Public Contracts Law > Dispute Resolution > Jurisdiction*

[HN8] Procurement decisions that are made after task orders have been issued are not subject to the Federal Acquisition Streamlining Act of 1994 (FASA) bar at *41 U.S.C.S. § 4106(f).* In contrast, a challenge to an award of a task order is subject to the FASA bar.

*Public Contracts Law > Dispute Resolution > Bid Protests*
*Public Contracts Law > Dispute Resolution > Jurisdiction*

[HN9] The text of *48 C.F.R. § 9.503* includes the word "may," indicating that a decision as to whether to waive an organizational conflict of interest is a matter left to agency discretion.

*Public Contracts Law > Dispute Resolution > Bid Protests*

[HN10] *4 C.F.R. § 21.11* provides that the Government Accountability Office may, at the request of a court, issue an advisory opinion on a bid protest issue that is before the court. *4 C.F.R. § 21.11.*

**HEADNOTES**

Administrative Procedure Act, *5 U.S.C. § 706(2)(A)* (arbitrary and capricious action); Federal Acquisition Streamlining Act of 1994; Jurisdiction; Organizational Conflicts of Interest, *48 C.F.R. § 9.500(a)*; Waiver of Conflict of Interest, *48 C.F.R. § 9.503*; *4 C.F.R. § 21.11* (advisory opinion); *12 C.F.R. § 366.1* ("minimum standards of integrity and fitness required by Federal Deposit Insurance Corporation contractors"); *12 U.S.C. § 1819(a)* (corporate powers of the Federal Deposit Insurance Corporation); *12 U.S.C. § 1822(f)* (conflicts of interest governing Federal Deposit Insurance Corporation contractors); *31 U.S.C. § 3554(b)-(c)* (decisions on bid protests by the United States Government Accountability Office).

**COUNSEL:** Robert S. Metzger, Patricia A. Meagher, Jeffery M. Chiow, Oliya S. Zamaray, Rogers Joseph O'Donnell PC, Washington, D.C., Counsel for the Plaintiff.

Christopher James Carney, United States Department of Justice, Trial Attorney, Commercial Litigation Branch, Washington, D.C., Counsel for the Government.

Marie Cochran, United States General Services Administration, Assistant General Counsel, Personal Property Division, Washington, D.C., Counsel for the Government.

2014 U.S. Claims LEXIS 16, *

Duncan N. Stevens, Robert J. Brown, Federal Deposit Insurance Corporation, Arlington, VA, Counsel for the Government.

**JUDGES:** SUSAN G. BRADEN, Judge.

**OPINION BY:** SUSAN G. BRADEN

**OPINION**

**MEMORANDUM OPINION AND ORDER**

    BRADEN, *Judge.*

**I. RELEVANT FACTUAL BACKGROUND.[1]**

    1    The relevant facts discussed herein were derived from: the December 9, 2013 Complaint and exhibits attached to a December 9, 2013 Memorandum of Points And Authorities In Support Of Plaintiff's Application For A Temporary Restraining Order and Preliminary Injunction ("Pl. Mem. Exs. A--O").

    To date, SRA International, Inc. ("SRA" or "Plaintiff") has provided network infrastructure support to the Federal Deposit Insurance Corporation ("FDIC"), pursuant to a September **[*2]** 2009 FDIC Infrastructure Support Contract ("ISC-2 Contract").[2] Compl. ¶ 11; Pl. Mem. Ex. A at A0003. The ISC-2 Contract was a task order, issued under the General Services Administration's ("GSA") Millenia Government-Wide Acquisition Contract ("Millenia GWAC"). Pl. Mem. Ex. A at A0008; Pl. Mem. Ex. G ¶ 1 (Contracting Officer's September 25, 2012 Statement of Facts in the United States Government Accountability Office Protest of SRA International, Inc., B-407709.5 (hereinafter the "CO's Statement")).

    2    The Complaint refers to the September 2009 FDIC Infrastructure Support Contract with SRA as the "ISC-2 Contract." Compl. ¶ 11.

    On June 21, 2012, the GSA Federal Systems Integration and Management Center ("FEDSIM") issued Task Order Request #GSC-QF0B-12-0020, on behalf of the FDIC, pursuant to the Alliant GWAC (that superseded the Millenia GWAC). Pl. Mem. Ex. G ¶ 1 (CO's Statement). On October 22, 2012, the GSA awarded Task Order #GST0013AJ0013 to Computer Sciences Corporation ("CSC"). After SRA filed a protest at the United States Government Accountability Office ("GAO"), GSA terminated the October 22, 2012 Task Order for convenience on December 13, 2012. Pl. Ex. G ¶ 2.

    After a series of **[*3]** corrective amendments,[3] on August 14, 2013, the GSA awarded Task Order #GST0013AJ0084 ("ISC-3 Contract" or "Task Order") to CSC for a price of $365,462,364, including all options. Pl. Mem. Ex. G ¶ 24. During an August 21, 2013 debriefing with SRA, the GSA confirmed that Blue Canopy Group, LLC ("Blue Canopy") was going to be a subcontractor for CSC on the ISC-3 Contract. Compl. ¶ 13. During the last five years, however, Blue Canopy worked under a FDIC contract to conduct security audits of SRA's network security, providing Blue Canopy with "access to SRA's proprietary information" and knowledge of "how the FDIC evaluated SRA's work." Compl. ¶ 15.

    3    The CO's Statement describes these corrective amendments. Pl. Mem. Ex. G ¶¶ 3-7; *see also id.* ¶ 2 ("As part of its corrective action in response to the [October 22, 2012 SRA's GAO] protest, the [GSA] worked with FDIC to define the parameters of the re-procurement.").

    Accordingly, on August 26, 2013, SRA filed a second protest with the GAO, citing two organizational conflicts of interest ("OCI") resulting from Blue Canopy's FDIC work: (1) impaired objectivity; and (2) unequal access to information. Compl. ¶ 14.[4]

    4    subpart 9.5 "[p]rescribes responsibilities, **[*4]** general rules, and procedures for identifying, evaluating, and resolving organizational conflicts of interest." *48 C.F.R. § 9.500(a).*

    On September 25, 2013, the GSA informed the GAO that Blue Canopy would not work on the ISC-3 Contract. Compl. ¶ 20; Pl. Mem. Ex. F at A0110. SRA agreed that this resolved the impaired objectivity OCI, but not the unequal access to information conflict. Compl. ¶ 23.

    In addition, SRA insisted that GAO proceed with the protest, because Section H.9.1 of the Task Order Request also requires compliance with the FDIC ethics regulations, set forth in *12 C.F.R. § 366.1.*[5] Compl. ¶ 28 (citing Section H.9.1 of the Task Order Request). And, Section K of the Task Order Request further advises contractors that the failure to certify compliance with *12 C.F.R. § 366.1* "shall result in the offeror being found non-responsible for award of this task order." Compl. ¶ 29 (quoting Task Order Request, *12 C.F.R. § 366.1*).

    5    "[P]art [366] establishes the minimum standards of integrity and fitness that contractors . . . must meet if they perform any service or function on [FDIC's] behalf." *12 C.F.R. § 366.1.*

On November 25, 2013, the GSA issued a Determination and Findings for Waiver **[\*5]** of Organizational Conflict of Interest Rules (hereinafter the "Waiver"). Pl. Mem. Ex. A at A0002. The Waiver stated that "FEDSIM believes that the application of the conflicts rules set forth in FAR subpart 9.5 to this [Task Order] is not in the Government's interest and that the waiver in accordance with . . . *FAR 9.503* [6] is appropriate." Pl. Mem. Ex. A at A0002. Consequently, on December 3, 2013, the GAO dismissed SRA's protest as "academic." Compl. ¶ 4.

> 6    *FAR Section 9.503* provides that an agency "may" waive rules or procedures concerning organizational conflicts of interest (subpart 9.5), "by determining that its application in a particular situation would not be in the Government's interest." *48 C.F.R. § 9.503.*

## II. PROCEDURAL HISTORY.

On December 9, 2013, SRA filed a post-award bid protest Complaint in the United States Court of Federal Claims. Count I seeks a declaration, under the Administrative Procedure Act ("APA"), *5 U.S.C. § 706(2)(A),* that the Waiver violated the FDIC's rules for ethics and conduct, set forth at *12 U.S.C. § 1819(a)* [7] (Tenth) and *12 U.S.C. § 1822(f).* [8] Compl. ¶¶ 32, 38. Count II seeks a declaration that the Waiver violated *FAR 9.503.* Compl. ¶ 46. Counts III and **[\*6]** IV allege that CSC and Blue Canopy also submitted false and materially misleading certifications, in violation of *12 C.F.R. § 366.1,* requiring issuance of a permanent injunction. Compl. ¶¶ 51, 54, 57, 61. The December 9, 2013 Complaint does not include a Count V. Count VI, however, seeks a declaration that the FDIC cannot make "an illegal award to an invalid offeror." Compl. ¶ 65. Count VII seeks a temporary restraining order. Compl. ¶¶ 68-70.

> 7    The FDIC's regulatory authority includes the power
>
> > [t]o prescribe by its Board of Directors such rules and regulations as it may deem necessary to carry out the provisions of [Chapter 16 of the United States Code] or of any other law which it has the responsibility of administering or enforcing (except to the extent that authority to issue such rules and regulations has been expressly and exclusively granted to any other regulatory agency).
>
> *12 U.S.C. § 1819(a).*

> 8    Congress requires that the FDIC through its Board of Directors to prescribe
>
> > regulations applicable to those independent contractors . . . governing conflicts of interest, ethical responsibilities, and the use of confidential information . . . . Any such regulations shall be in addition to, **[\*7]** and not in lieu of, any other statute or regulation which may apply to the conduct of such independent contractors.
>
> *12 U.S.C. § 1822(f)(3).*

On December 9, 2013, SRA also filed: a Motion For Temporary Restraining Order; a Motion For Preliminary Injunction; and a Motion For A Protective Order. SRA also filed a Memorandum of Points And Authorities In Support Of Plaintiff's Application For A Temporary Restraining Order and Preliminary Injunction.

On December 11, 2013, the court convened a telephone conference to discuss jurisdictional issues raised in the December 9, 2013 Complaint and ordered the parties to brief the issue of the court's jurisdiction.

On December 16, 2013, the Government filed a Motion to Dismiss. On December 20, 2013, SRA filed a Response. On December 23, 2013, the Government filed a Reply, with leave of the court. [9]

> 9    On December 11, 2013, CSC filed a Motion To Intervene which the court will consider at a later date.

## III. DISCUSSION.

### A. Standard Of Review For Subject-Matter Jurisdiction, Pursuant To *RCFC 12(b)(1)* And *12(h)(3).*

[HN1] As a matter of law, the court must consider jurisdiction before reaching the substantive merits of a case. *See Gonzalez v. Thaler,    U.S.    , 132 S.Ct. 641, 648, 181 L. Ed. 2d 619 (2012)* **[\*8]** ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented."); *see also Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001)* ("Jurisdiction is a threshold issue that the court may raise *sua sponte.*"); *Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir. 1997)* ("Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any de-

fense that may be interposed."); *View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997)* ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). Subject-matter jurisdiction may be challenged "at any time by the parties or by the court sua sponte." *Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004)*; *see also RCFC 12(b)(1)* (allowing parties to assert lack of subject-matter jurisdiction by motion); *RCFC 12(h)(3)* ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). When deciding a subject-matter **[*9]** jurisdiction challenge, the court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Boyle v. United States, 200 F.3d 1369, 1372 (Fed. Cir. 2000)* (citation omitted).

## B. The Effect Of The Federal Acquisition Streamlining Act On The Jurisdiction Of The United States Court Of Federal Claims To Adjudicate Bid Protests.

[HN2] The Tucker Act authorized the United States Court of Federal Claims

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

*28 U.S.C. § 1491(b)(1).*

[HN3] The Federal Acquisition Streamlining Act of 1994 ("FASA"),[10] however, precludes the court from adjudicating protests "in connection with the issuance or proposed issuance of a task or delivery order," unless the protest is "on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued." *41 U.S.C. § 4106(f)*;[11] *see also BayFirst Solutions LLC v. United States, 104 Fed. Cl. 493, 502 (2012)* **[*10]** ("This court has consistently interpreted the *[Section 4106(f)]* ban as prohibiting task order protests in this court on any grounds[,] other than the specific excepted allegations of excessive scope, period, or value of the proposed task order."). As to protests "in connection with the issuance or proposed issuance of a task or delivery order . . . . valued in excess of $10,000,000," the FASA vests the Comptroller General of the GAO with exclusive jurisdiction. *See 41 U.S.C. § 4106(f).*[12]

10    Pub. L. No. 103-355, § 1004, 108 Stat. 3243, 3252-53 (codified at *10 U.S.C. § 2304c(e)* and *41 U.S.C. § 4106(f)*). FASA was enacted as a "comprehensive overhaul of the federal acquisition laws" to "improve the efficiency and effectiveness of the laws governing the manner in which the government obtains goods and services." *DataMill, Inc. v. United States, 91 Fed. Cl. 740, 751-52 (2010)* (quoting S. Rep. No. 103-258, at 1-2, 3 (1994)).

11    *Section 4106 of the FASA* provides:

> [HN4]  (a)  Application.--This section applies to task and delivery order contracts entered into under sections 4103 and 4105 of this title.

>        . . .

> (f) Protests.--

> (1)  Protest not authorized.--A protest is not authorized in connection with the issuance **[*11]** or proposed issuance of a task or delivery order except for--

>> (A) a protest on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued; or

>> (B) a protest of an order valued in excess of $10,000,000.

> (2)  Jurisdiction over protests.--Notwithstanding section 3556 of title 31, the Comptroller General shall have exclusive jurisdiction of a protest authorized under paragraph (1)(B).

> (3)   Effective period.--Paragraph (1)(B) and paragraph (2) of this subsection shall not be in effect after September 30, 2016.

*41 U.S.C. § 4106.*

12   The Task Order at issue in this case is valued at well over $10 million. Pl. Mem. Ex. G ¶ 24.

## 1. The Government's Argument.

The Government argues that the United States Court of Federal Claims consistently has dismissed bid protests that concern the issuance of a task order. Gov't Br. 11-12; *see also MORI Assocs., Inc. v. United States, 113 Fed. Cl. 33, 37-38 (2013)* (dismissing a protest of an agency's decision to obtain services by issuing a task order); *Chameleon Integrated Servs. LLC v. United States, 111 Fed. Cl. 564, 570-71 (2013)* (determining that the court does not have jurisdiction to adjudicate a bid protest **[*12]** concerning a task order); *Mission Essential Pers., LLC v. United States, 104 Fed. Cl. 170, 179 (2012)* ("[C]orrective action relates to, and is connected with, the issuance of a task order."); *Solute Consulting v. United States, 103 Fed. Cl. 783, 791-94 (2012)* (dismissing a challenge to an agency's evaluation of task order proposals); *DataMill, 91 Fed. Cl. at 761-62* (determining that the United States Army's decision to use a delivery order for a sole-source procurement was "in connection" with a delivery order)).

The Government contends that SRA's protest also concerns the issuance of a task order under the same kind of interagency GWAC for which the United States Court of Federal Claims previously has applied the FASA bar. Gov't Br. 12 (citing *Chameleon Integrated Servs., 111 Fed. Cl. at 571* (determining that a task order issued pursuant to an interagency GWAC is subject to the FASA ban, because the plaintiff "offer[ed] no category other than FASA under which to treat the task order"). Nevertheless, "SRA is attempting to bring a prohibited task order protest before this [c]ourt." Gov't Br. 13-14 (citing, *e.g.*, Compl. ¶ 2 ("These certifications, and the absence of OCI, were expressly **[*13]** required by the [Task Order Request] and applicable FDIC regulations[.]"); Compl. ¶ 5 ("[A]n award to CSC will deprive SRA of a task order[.]")). In addition, the relief requested in *Mission Essential Personnel, Chameleon Integrated Services, BayFirst Solutions*, and *DataMill* is the same as that sought here, *i.e.*, in each case, the protestor requested that the court enjoin and set aside a task order award. In each case, however, the court correctly applied the FASA bar and "declined to do so." Gov't Br. 14; *see also* Gov't Br. 15 ("Once it is understood that the ISC-3 procurement refers to GSA's task order request, FASA is plainly implicated and the lack of jurisdiction by this [c]ourt is confirmed."). In other words, because the relief requested by SRA implicates a task order, the court does not have jurisdiction. Gov't Br. 14.

Moreover, the facts establish that "the OCI waiver at issue here was made in connection with and in furtherance of the issuance of a task order." Gov't Br. 16. The GSA's Senior Procurement Executive, approving the Waiver, found that the benefit of proceeding with the Task Order outweighed any alleged "unsubstantiated residual possibility of an OCI in this situation." **[*14]** Gov't Br. 16 (quoting Pl. Mem. Ex. A at A0011). In addition, the Alliant GWAC governing this Task Order authorizes a waiver, "if the [CO] determines that it is in the best interest of the Government to issue the Order." Gov't Br. 17 (quoting Alliant GWAC § H.9). Indeed, SRA also conceded that GAO has exclusive jurisdiction over the OCI and the subsequent Waiver, as the Task Order exceeded the $10,000,000 threshold. Gov't Br. 17.

Finally, SRA's argument that the FASA bar does not apply to protests concerning violations of law or regulation "in connection with a procurement" (Pl. Mem. 14) "is a misstatement of law." Gov't Br. 21. Only two exceptions exist: the increased scope, value or period exception; and the $10 million exception. Gov't Br. 21 (citing *Mission Essential Pers., 104 Fed. Cl. at 177 n.17* ("[The] law provides for two exceptions to its general ban on task-order-related protests."); *see also* Gov't Br. 26 (arguing that SRA could have challenged the Waiver during the 2013 GAO protest). To create an exception to challenge violations of law or regulation would obliterate the bar. Gov't Br. 21; *see also* Gov't Br. 23 (citing *Bay-First Solutions, 104 Fed. Cl. at 505* (declining to **[*15]** adjudicate a protest, even where the procurement violated a regulation establishing a dollar ceiling for noncompeted task orders); *Mission Essential Pers., 104 Fed. Cl. at 179* (same, where corrective action allegedly violated statutory and regulatory provisions); *DataMill, 91 Fed. Cl. at 762* (same, where an agency allegedly violated the Competition in Contracting Act)). In this case, "all the violations of law and regulations [in SRA's Complaint] . . . [are] derive[d] from the task order request itself." Gov't Br. 24.

## 2. The Plaintiff's Response.

SRA responds that this case challenges the Waiver, not the August 14, 2013 award of the Task Order to CSC. Pl. Resp. 1-3. In issuing the Waiver, the GSA and FDIC violated several statutory and regulatory obligations. Pl. Resp. 2 (citing Compl. Counts I, II, and III); *see also* Pl. Resp. 5 ("SRA addressed the independent obligations of FDIC law and regulation, as distinct from the terms of the Solicitation, throughout [SRA's] Complaint."). The United States Court of Federal Claims also has jurisdiction to review the Waiver, because "FDIC's laws and regulations exist apart from the task order request and the task order." Pl. Resp. 5; *see also* Pl. **[*16]** Resp. 14-15 (citing *Emery Worldwide Airlines, Inc. v.*

*United States*, 264 F.3d 1071, 1080 (Fed. Cir. 2001) ("[T]he [United States] Court of Federal Claims is the only judicial forum to bring any governmental contract procurement protest."); *Novell, Inc. v. United States*, 109 F. Supp. 2d 22, 24 (D.D.C. 2000) ("[T]here no longer is . . . an independent, APA-based jurisdiction for the district courts in government bid protest cases; rather, Congress effectively subsumed APA jurisdiction of the district courts into the more specific jurisdictional language of [the Administrative Dispute Resolution Act of 1996].").  Although the GAO can "recommend an appropriate remedy," GAO decisions "lack the force and effect of law, even where GAO finds a procurement violation." Pl. Resp. 30 (citing *31 U.S.C. § 3554(b)-(c)*).[13] In this case, "GAO offers no meaningful remedy." Pl. Resp. 31.

> 13    *31 U.S.C. § 3554(b)* and *(c)* sets forth procedures by which the GAO will recommend corrective actions, if "the Comptroller General determines that the solicitation, proposed award, or award does not comply with a statute or regulation." *31 U.S.C. § 3554(b)(1)*.

The Tucker Act authorizes the United States Court of Federal **[*17]** Claims to adjudicate objections to: (a) solicitations; (b) awards; or (c) "any alleged violation of a statue or regulation in connection with a procurement." Pl. Resp. 21 (citing *28 U.S.C. § 1491(b)(1)*). The FASA bar on bid protests "in connection with the issuance of a task order" corresponds to (b), precluding judicial review, where an award or proposed award concerns a task order. Pl. Resp. 21. That bar, however, does not affect (c), *i.e.*, any alleged violation of statute or regulation in connection with a procurement. Pl. Resp. 21; *see also* Pl. Resp. 18-19 (citing *Distrib. Solutions, Inc. v. United States*, 539 F.3d 1340, 1345-46 (Fed. Cir. 2008) (holding that the United States Court of Federal Claims has jurisdiction to review a bid protest of a task order that allegedly violated the Competition in Contracting Act's requirements)). In this case, SRA does not challenge GSA's award of the Task Order, but the "*post-award* decision" by GSA to issue the Waiver. Pl. Resp. 19, 22-23 (emphasis in original).

It is well established that the conduct at issue in this case is subject to judicial review when the "conduct is segregable from the issuance or proposed issuance of a task order." Pl. **[*18]** Resp. 19 (citing *Distrib. Solutions*, 539 F.3d 1340; *see also Global Computer Enters. v. United States*, 88 Fed. Cl. 350, 410 (2009), *modified on other grounds*, 88 Fed. Cl. 466 (2009) (explaining that the FASA bar governs only the issuance or proposed issuance of a task order)). For example, in *McAfee v. United States*, 111 Fed. Cl. 696 (2013), the court examined "[t]he predicate for [the plaintiff's] claim" and determined that the court had jurisdiction because the con-

tractor did not challenge the delivery order, but rather a separate decision to shift to a sole source, standardized network security system. Pl. Resp. 23 (citing *McAfee*, 111 Fed. Cl. at 707-08); *see also* Pl. Resp. 25 (citing *Global Computer Enters.*, 88 Fed. Cl. at 414-15 (exercising jurisdiction to adjudicate a modification to a task order); *Unisys Corp. v. United States*, 90 Fed. Cl. 510, 517 (2009) (exercising jurisdiction to adjudicate a challenge to a decision to waive a stay provision during a GAO protest of a task order)).

Only "where the protest challenges the issuance or prospective issuance of a task order" does the FASA bar apply. Pl. Resp. 26 (citing *Chameleon Integrated Servs., 111 Fed. Cl. at 570-71* (applying **[*19]** the FASA bar to prohibit a challenge to corrective action made to a task order); *see also Mission Essential Pers.*, 104 Fed. Cl. at 179 ("[T]he Army's corrective action is . . . intimately entwined with the issuance of the two initial task orders.")). In this case, "SRA seeks relief [that] is simply not inextricably linked to the issuance or proposed issuance of a task order." Pl. Resp. 29. Instead, the relief requested is tied to specific alleged violations of law and regulation stemming from the issuance of the Waiver. Pl. Resp. 29. The Government's "novel proposition that asking for relief that might upset a task order award strips this [c]ourt of jurisdiction" is an "odd rule" that is not supported in law, regulation, or appellate precedent. Pl. Resp. 28.

### 3. The Court's Resolution.

The threshold issue in this case is whether SRA's challenge to the Waiver is a protest "*in connection with* the issuance or proposed issuance of a task . . . order." *See 41 U.S.C. § 4106(f)(1)* (emphasis added).

[HN5] The United States Court of Appeals for the Federal Circuit has interpreted the phrase "in connection with," as used in *28 U.S.C. § 1491(b)(1)*, broadly. *See RAMCOR Servs. Group, Inc. v. United States*, 185 F.3d 1286, 1289 (Fed. Cir. 1999) **[*20]** ("The operative phrase "in connection with" [of *28 U.S.C. § 1491(b)*] is very sweeping in scope."). The United States Court of Appeals for the Federal Circuit also has held that, "[u]nder [the *in pari materia* canon, courts should interpret statutes with similar language that generally address the same subject matter together, 'as if they were one law.'" *Strategic Hous. Fin. Corp. of Travis County v. United States*, 608 F.3d 1317, 1330 (Fed. Cir. 2010) (quoting *Erlenbaugh v. United States*, 409 U.S. 239, 243, 93 S. Ct. 477, 34 L. Ed. 2d 446 (1972)). To be sure, the subject matter of *28 U.S.C. § 1491(b)(1)* and *41 U.S.C. § 4106(f)* concern the bid protest jurisdiction of the United States Court of Federal Claims, but the Government does not argue that application of the *in pari materia* canon is appropriate here. In any event, the court reads the appel-

late court's "sweeping" characterization of the scope of *28 U.S.C. § 1491(b)(1)* as dicta. *See Global Computer Enters.*, 88 Fed. Cl. at 419 ("The [United States Court of Appeals for the] Federal Circuit's interpretation of the phrases 'in connection with' and 'procurement' in the Tucker Act ultimately offer no guidance concerning the meaning of the phrases 'in connection with' **[*21]** and 'task order' in the FASA."); *cf. Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1374 (Fed. Cir. 2009) (Dyk, J., dissenting) (limiting the scope of the military task order bar, codified at *10 U.S.C. § 2304c(e)(1)* (similar to the FASA bar), to "challenges to the task order or delivery order," but not "protests of an overall solicitation or IDIQ contract"). Instead, the court is persuaded that "a careful analysis of the connectedness of each challenged procurement decision to the issuance or proposed issuance of a task order" is required. *BayFirst Solutions*, 104 Fed. Cl. at 503; *see also id.* ("[V]ariations in interpretation of the task order protest ban . . . arise in the complex and distinct fact patterns of individual bid protests.").

The gravamen of the Government's argument fails to acknowledge that the court's jurisdictional inquiry is not whether the alleged unlawful agency action is *related to* the issuance of a task order, but rather whether the alleged unlawful agency action was made "*in connection with*" the issuance of a task order. *See, e.g.*, Gov't Br. 15 ("Once it is understood that the ISC-3 procurement *refers* to GSA's task order request, FASA is plainly implicated **[*22]** and the lack of jurisdiction by this Court is confirmed." (emphasis added)). In such circumstances, [HN6] the court has exercised jurisdiction to adjudicate the lawfulness of a variety of actions *related to* a task order.[14] For example, the court has determined that an agency decision to cancel a solicitation so it could transition contract services to another contractor by task order was "a discrete procurement decision," not subject to the FASA bar. *See BayFirst Solutions*, 104 Fed. Cl. at 507. Although the cancellation and subsequent issuance of the task order nominally were "connected," the court exercised jurisdiction, because the agency's cancellation action still "could have been the subject of a separate protest." *Id.; see also id.* at 508 (citing *e-Management Consultants, Inc.; Centech Group, Inc.*, B-40585.2, B-400585.3, 2009 CPD ¶ 39, 2009 WL 416345 (Comp. Gen. Feb. 3, 2009) (allowing a challenge to the cancellation of a solicitation, but not allowing a challenge to the subsequent task order)). In addition, the court has determined that "[d]iscrete, preliminary matters that may not necessarily lead to the proposed issuance of a task order," are not subject to the FASA bar. *See Mori Assocs., Inc. v. United States*, 113 Fed. Cl. 33, 38-39 (2013) **[*23]** (exercising jurisdiction to adjudicate a small business set aside); *see also Savantage Fin. Servs., Inc. v. United States*, 81 Fed. Cl. 300 (2008) (exercising juris-

diction to adjudicate a challenge to an agency's Brand Name Justification); *Weeks Marine, Inc. v. United States*, 79 Fed. Cl. 22 (2007), rev'd on other grounds 575 F.3d 1352 (Fed. Cir. 2009) (exercising jurisdiction to adjudicate a challenge to a decision to use task orders, instead of sealed bidding).

14  The Government does acknowledge that the court has exercised jurisdiction to adjudicate a challenge to an Air Force delivery order to purchase network security via a particular brand instead of an open competition. Gov't Br. 22 (citing *McAfee*, 111 Fed. Cl. at 707-08). The Government, however, disputes that ruling and argues that, in any event, it is inapplicable to this case. Gov't Br. 22; *see also id.* ("Nothing in *McAfee* suggests that FASA's task order ban does not apply when jurisdiction is asserted under the 'violation of statute or regulation' . . . prong of *Section 1491(b)*.") Although the Government is correct that *McAfee* does not establish a systematic exemption to the FASA bar, the Government misses the more salient **[*24]** point that [HN7] a challenge to an agency decision "not tied to any single solicitation or delivery order" avoids the bar, even though the decision was accomplished through a modification to a task order. *See McAfee*, 111 Fed. Cl. at 707. For the *McAfee* court, the timing of the agency decision supported the finding that the decision was an independent, discretionary agency action that was not "connected with" the issuance of the task order. *Id.* at 707 ("The Air Force began the process of determining its need for a new generation of network security services long before it issued the delivery order . . . , let alone modified it.").

In this case, the best evidence that the Waiver was not made "in connection with" the award of the Task Order to CSC is that fact that the Waiver was issued well after the award. [HN8] "Procurement decisions that are made *after* task orders have been issued" are not subject to the FASA bar. *See Mori Assocs.*, 113 Fed. Cl. at 38 (citing *Global Computer Enters.*, 88 Fed. Cl. at 410-15 (exercising jurisdiction to adjudicate a modification of a task order)). In contrast, a challenge to an award of a task order is subject to the FASA bar. *See BayFirst Solutions*, 104 Fed. Cl. at 503. **[*25]** In this case, the GSA, "acting with the concurrence of the FDIC," waived the alleged conflict of interest, 102 days after the Task Order was awarded to CSC. Compl. ¶¶ 24-25 (quoting Waiver, Pl. Mem. Ex. A0002).

Another salient fact is that [HN9] the text of *FAR 9.503* includes the word "may," indicating that a decision as to whether to waive an OCI is a matter left to agency

discretion. *See Turner Constr. Co. v. United States, 94 Fed. Cl. 561, 584 (2010), aff'd, 645 F.3d 1377 (Fed. Cir. 2011)* ("The [G]overnment responds that the decision to waive [under *FAR 9.503*] is entirely discretionary and need not be documented . . . . The [G]overnment is also correct . . . [because the regulation] contains no hint of a requirement that an agency *must* waive or *must* document the reasons for a waiver decision."); *see also* GOVERNMENT CONTRACT GUIDEBOOK § 3:35 (4th ed. 2013) ("Agencies have discretion under *FAR 9.503* to seek an OCI waiver."). Interestingly, in this case the GSA acknowledged that the Waiver may not have been necessary, regardless of the outcome of the GAO protest:

> [I]t should be noted that the waiver may prove unnecessary if the outcome of the GAO protest is favorable to the Government **[*26]** . . . . Conversely, if the outcome of the GAO protest is unfavorable to the Government on the non-OCI (technical evaluation) issue, the waiver may prove insufficient, as the non-OCI issues cannot be waived.

Pl. Mem. Ex. A at A0009.

Therefore, not only is the Waiver in this case discretionary, it is also distinct--in both a temporal and causal sense--from the ISC-3 Task Order. It is true that prior to waiving an OCI, the CO must determine the existence of an OCI, a determination that "depends on the particular facts and circumstances of the contract being performed and on the nature of the new procurement." *See Jacobs Tech. Inc. v. United States, 100 Fed. Cl. 198, 210-11 (2011)*. That does not mean, however, that the Waiver had a "direct, causal relationship" to the issuance of the Task Order. *See Mori Assocs., 113 Fed. Cl. at 38* ("There is no direct, causal relationship between these decisions and the issuance of task orders . . . since the task orders had already issued."). In fact, the Waiver was not a necessary step towards issuance of the task order. Instead, the Waiver was a discretionary agency action to prevent GAO's review of the substance of SRA's protest. Thus, the Waiver is not **[*27]** similar to a corrective action that the court has found was "intimately entwined" and directly and causally linked to a series of task orders. *See Mission Essential Pers., 104 Fed. Cl. at 178-79* (finding the task order bar applied to the challenged corrective action); *see also id. at 179* ("[T]he Army's corrective action *was* its decision to compete a new task order under the IDIQ [Indefinite Delivery Indefinite Quantity] contract."). Here, SRA's challenge to the substantive merits of the Waiver parallels a challenge to the Transportation Security Administration's ("TSA") independent, discretionary decision to cancel an automatic stay of

performance of a task order during the protest before the GAO. *See Unisys, 90 Fed. Cl. at 515-16*. In *Unisys*, the court determined that it had jurisdiction to adjudicate TSA's decision to override an automatic stay, under *28 U.S.C. § 1491(b)(1)*, despite the FASA bar, because the court could "review[] an agency's compliance with [The Competition in Contracting Act *section] 3553* 'independent of any consideration of the merits of the underlying contract award.'" *Id. at 517* (quoting *Planetspace Inc. v. United States, 86 Fed. Cl. 566, 567 (2009)*). Although **[*28]** corrective action may be a necessary component for the issuance of a task order, discretionary agency waivers designed only to short-circuit substantive review of a task order are not necessary for the issuance. *Compare, e.g., Mission Essential Pers., 104 Fed. Cl. at 178-79* (finding corrective action to be "intimately entwined" with a series of task orders), *with Unisys, 90 Fed. Cl. at 515-16* (finding a decision to override an automatic stay in a task order protest to be independent from the task order itself).

For these reasons, the court has determined that the Waiver in this case was not made "in connection with" the issuance of the Task Order, but was an independent discretionary agency action and therefore, *41 U.S.C. § 4106(f)(1)* does not bar the court from adjudicating whether the Waiver otherwise violated APA standards.

## IV. CONCLUSION.

The Government has represented that the "continuing delay of the procurement is resulting in the loss of experienced staff from the [existing] SRA contract and a diminishing level of confidence in their ability to perform." Pl. Mem. Ex. L (11/19/13 Decl. of Russell G. Pittman, Director, FDIC Division of Information Technology). In light of the exigent **[*29]** circumstances and at the Government's request, the court has decided to request that the GAO issue an advisory opinion as to whether the Waiver violated APA standards and, if so, to adjudicate the merits of the August 26, 2013 protest no later than close of business, January 23, 2014, *i.e.*, as if the Waiver had not issued. *See 4 C.F.R. § 21.11.*[15] Therefore, the Clerk of the Court is directed to communicate with the GAO, and to request an advisory opinion accordingly.

> 15    [HN10] *Section 21.11* provides that the "GAO may, at the request of a court, issue an advisory opinion on a bid protest issue that is before the court." *4 C.F.R. § 21.11.*

**IT IS SO ORDERED.**

/s/ Susan G. Braden

**SUSAN G. BRADEN**

2014 U.S. Claims LEXIS 16, *

**Judge**

Form 30

**FORM 30. Certificate of Service**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on
by:

March 26, 2014

☐ US mail
☐ Fax
☐ Hand
☒ Electronic Means
    (by email or CM/ECF)

Robert S. Metzger

Name of Counsel

/s/ Robert S. Metzger

Signature of Counsel

Law Firm    Rogers Joseph O'Donnell

Address    750 Ninth Street NW, Suite 710

City, State, ZIP    Washington, DC  20001

Telephone Number    (202) 777-8951

FAX Number    (202) 347-8429

E-mail Address    RMetzger@rjo.com

NOTE: For attorneys filing documents electronically, the name of the filer
under whose log-in and password a document is submitted must be preceded
by an "/s/" and typed in the space where the signature would otherwise appear.
Graphic and other electronic signatures are discouraged.

**Form 19**

FORM 19.  **Certificate of Compliance With Rule 32(a)**

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

☑    The brief contains [          *13,315*          ] words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

☐    The brief uses a monospaced typeface and contains [ *state the number of* ] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☑    The brief has been prepared in a proportionally spaced typeface using [          *Microsoft Word 2010*          ] in [          *Times New Roman, 14 pt*          ], or

☐    The brief has been prepared in a monospaced typeface using [     *state name and version of word processing program*     ] with [ [     *state number of characters per inch and name of type style*     ].

/s/ Robert S. Metzger
_____
(Signature of Attorney)

Robert S. Metzger
_____
(Name of Attorney)

Counsel for Appellant
_____
(State whether representing appellant, appellee, etc.)

March 26, 2014
_____
(Date)

[ Reset Fields ]